Argued and submitted November 3, 1987, decision of the Court of Appeals reversed
and remanded with instructions to dismiss September 30, 1988

## OREGON ENVIRONMENTAL COUNCIL et al,
*Petitioners on Review,*

*v.*

## OREGON STATE BOARD OF EDUCATION et al,
*Respondents on Review.*

(IEB 11-1986; CA A39946; SC S34337)

761 P2d 1322

Allen L. Johnson, Eugene, argued the cause and filed the petition and brief in response to questions from the Court for petitioner on review.

Jerome S. Lidz, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the memorandum in response to questions from the Court were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

■ The Oregon Environmental Council and the Portland Audubon Society seek to overturn a decision of the State Board of Education (Board) approving a textbook, *Get Oregonized,* for use in Oregon's public elementary schools. The issue is whether the Board's decision is a rule or an order and, if an order, whether in a contested case or otherwise. The answer implicates, among other things, the scope of judicial review, the procedures by which the decision was made, the criteria by which the decision must be measured and whether petitioners can seek review in the appellate courts at this time. The Court of Appeals decided that the Board's decision was a rule and upheld its validity. We hold that the decision was an order in other than a contested case, *i.e.,* a matter not reviewable in the Court of Appeals, and therefore reverse the decision of that court and remand the case to it with instructions to dismiss the petition for judicial review.

### BACKGROUND

We begin with some background on the textbook approval process. The Board, whose decision is here challenged, has three responsibilities with regard to textbook selection. First, it appoints the seven members of the State Textbook Commission (Commission), ORS 337.011. Second, it establishes "guidelines and criteria for review and selection of textbooks," ORS 337.035.[1] It has done so by rule, OAR 581-11-118.[2] Finally, the Board ratifies or rejects the Commission's selection of textbooks for use in Oregon public schools. ORS 337.055. District school boards are required to select the books for use from the books on the approved list.[3]

---

[1] The Board has delegated the development of guidelines and criteria to "criteria committees" that work under the supervision of the Commission. OAR 581-11-055(2); OAR 581-11-060. These guidelines and criteria are approved by the Commission, then reviewed and adopted by the Board. OAR 581-11-065.

[2] OAR 581-11-118 adopts 1984 criteria by reference. The criteria themselves are not published in the OAR but are available from the Department of Education.

[3] ORS 337.120 provides:

"(1) Except as otherwise provided in ORS 337.141, the district school board, with the assistance of teachers and administrators of the district, shall select textbooks and other instructional materials for each grade and subject field from the multiple choice approved list. * * *

"(2) The board shall cause at least one-half of the books or materials, according to titles, so selected to be used in its schools at the beginning of the next school year following the selection and the remainder thereof at the beginning of the second school year following the selection, except when authorized by the Superintendent of Public Instruction to postpone such use for a reasonable period of time."

The textbook selection process begins when a publisher submits to the Commission its proposed text documenting how the text conforms to the guidelines and criteria adopted by the Board. ORS 337.060; OAR 581-11-095. The Commission must prepare a "multiple choice list" of approved texts periodically. ORS 337.050.[4] The Commission meets in public meeting on a designated day every other year "for the purpose of reviewing and selecting textbooks." ORS 337.040(1). It "may select or reject" a textbook contained in a publisher's proposal. It "may reject" a text if the terms and conditions for furnishing the text are "unreasonable" or the text is "unsuitable" pursuant to the Board's guidelines and criteria. ORS 337.075(1).

The Board then reviews the Commission's list of selected texts and may "ratify" or "reject" any textbook on the list. ORS 337.055. The Board "shall reject" any text that does not meet "to the degree determined by the State Board of Education" its guidelines and criteria. ORS 337.055. There is nothing in the record or the Board's administrative rules to indicate what "degree" of compliance with guidelines the Board has "determined" to be adequate. We know only that the Board approved this text.

The textbook selection statutes contain no directives about procedures to be used in the selection process.[5] We do not know, for example, how a publisher might challenge a Commission recommendation or a Board decision to reject a textbook. As explained *infra,* the publisher would be entitled, upon request, to a decision based on a hearing record and an explanation before a textbook rejection is final. For example, ORS 337.075(2) provides that, if a text is rejected, a publisher may submit a new proposal for the rejected text "at the same or subsequent sessions" of the Commission, and the Commission "may * * * select the textbook in the same manner as other textbooks are required to be selected." In addition, the

---

[4] A school district may also use a text not included on the Board's list. Districts with fewer than 15,000 members may, with Board approval, select texts that meet Board guidelines. Larger districts make selections in compliance with Board guidelines without Board approval. ORS 337.141.

[5] This omission may be explained in part by what appears to be an expectation we derive from the textbook statutes that most proposed texts will be approved by the Commission and Board, a statutory predisposition toward approval of textbooks which, for constitutional reasons, may well be appropriate.

Board has provided by rule that any person wishing to challenge approval (but not rejection) of a text selected by the Commission shall have an opportunity to be heard in advance of the Board's decision. OAR 581-11-070.[6]

## PROCEEDINGS BELOW

The Commission selected *Get Oregonized* as a fourth grade social studies text. The Board published notice that it intended to amend OAR 581-11-072, its list of approved textbooks. A Board hearings officer held a public hearing on February 5 and 6, 1986, at which proponents and opponents of the textbook testified. Those speaking in favor asserted that the book provided needed information about Oregon's timber and agricultural industries. They contended that it compared well with other approved texts and that the minor errors of fact and grammar could be corrected in later editions.[7] Those opposed criticized it as advocating exploitation of natural resources, as being of poor quality and grammatically incorrect. The Board was apprised of the competing positions by the written report of the hearings officer. In a six to one vote on March 6, the Board by resolution amended its rule to include *Get Oregonized* as an approved textbook and authorized contracts with the publisher. The rule was filed with the Secretary of State on March 19, 1986.

---

[6] OAR 581-11-070 provides:

"(1) Following selection of textbooks by the State Textbook Commission, a list of those textbooks shall promptly be presented to the State Board of Education for review and ratification or rejection of any book. The State Board of Education shall, prior to the January meeting of the Board, ensure an opportunity to be heard for any person or persons who wish to challenge the adoption of any texts selected by the Commission. The State Board of Education shall make final ratification or rejection of textbooks at the January meeting of the Board each odd-numbered year.

"(2) Persons wishing to challenge the adoption of any textbook shall give written notification to the State Board of Education of their intent prior to any Board hearing on adoption of the textbook. Such written notification shall include a statement of the basis of the challenge. The statement shall be presented on the form adopted by the State Board of Education and available from the office of the State Textbook Commission."

There appears to be no rule for challenging rejection of a textbook, possibly because it is recognized that different rights are involved and the publisher may be expected to pursue adoption without need of outside support or encouragement.

[7] Those testifying in favor included the book's author, Rod Fielder, listed in the hearings officer's report as "Director, Get Oregonized Project." Exhibit A, Report of Hearings Officer.

Petitioners filed a petition for judicial review to the Court of Appeals, seeking review and reversal of the Board's decision, which petitioners characterize as either a rule amendment or an order in a contested case. The Board responded that the Board's decision is a rule, promulgated with all necessary procedures, which the Board need not support with an evidentiary record. In the alternative, the Board argues that the decision is an order in other than a contested case from which petitioners must seek review first in the circuit court. ORS 183.484.[8] The Court of Appeals held that the decision was a rule and was valid. *Oregon Env. Council v. Oregon State Bd. of Ed.*, 86 Or App 249, 739 P2d 581 (1987).

Petitioners argue that if the decision were a rule, the Board is obliged but has failed to explain how the book complied with its guidelines and criteria. They assert that, if it is an order in contested case, the Board failed to provide contested case procedures and to support its decision with substantial evidence in the record. We consider each of these contentions in turn.

## THE AGENCY DECISION WAS NOT A RULE

ORS 183.310 to 183.550, commonly called the Administrative Procedures Act (APA), defines rules and orders in part by the breadth of their respective applications. A rule is an "agency directive, standard, regulation or statement of general applicability." ORS 183.310(8). An order is an "agency action * * * directed to a named person or named persons." ORS 183.310(5).

The Court of Appeals held that the Board's decision to approve *Get Oregonized* was a rule, adopting the Board's characterization that it is "a 'directive * * * of general applicability that implements * * * [the] policy' embodied in ORS 337.035 to 337.055 and the Board's rules and criteria,"

---

[8] Petitioners took the precaution of filing an appeal in the circuit court as well as in the Court of Appeals. This was a sensible precaution, but the statutory scheme — with its jurisdictional trap for the unwary lawyer who seeks judicial review in only one (the wrong) court — is a silly way to run a railroad. Members of this Court have been critical of this feature of the APA and judicial review of agency action in general in the past. *See, e.g., Forman v. Clatsop County,* 297 Or 129, 133-37, 681 P2d 786 (1984) (Peterson, C. J., concurring). Had the 1987 legislature seen fit to enact HB 2306, section 3 of that bill would have eliminated the necessity of double filing. Enaction of a single mode of judicial review of government action is long overdue.

86 Or App at 252 n 2, the rationale being that the decision was generally applicable to all school districts. This analysis focuses on the wrong issue. Although the decision applies to all school districts, it concerns but one book. Viewed in that light, the Board's decision is functionally similar to individual licensing decisions made by professional licensing agencies. Such licensing decisions are orders, not rules, *see, e.g., Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), although they affect others beyond the individual seeking a license.

The present action by the Board concerns the application of guidelines and criteria of general applicability to a particular textbook. By statute, the Board must decide whether *Get Oregonized* met its preexisting standards for textbooks. ORS 337.055. The Board's decision is directed to a named textbook, if not a named person. The publisher initiated the process and is directly affected by its outcome. Statutes require the Board and Commission to act on each individual proposal for textbook approval.[9] If the publisher submits a timely and complete proposal, the Commission and Board are not free to ignore it; the Commission's decision "selecting" or "rejecting" and the Board's decision "ratifying" or "rejecting" the text is expected to follow. ORS 337.075; 337.055. Thus, the decision is an order. The question becomes whether the order must be made in a contested case or by some other procedure.

## THE ORDER WAS NOT AN ORDER IN A CONTESTED CASE

Orders may be issued either in contested cases or in less formalized circumstances, *i.e.,* in circumstances "other than" contested cases. Under ORS 183.310(2)(a), a contested case means:

"[A] proceeding before an agency:

"(A)   In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

---

[9] The agency cannot indefinitely postpone or abandon a decision as it could if this were a quasi-legislative proposal.

"(B)   Where the agency has discretion to suspend or revoke a right or privilege of a person;

"(C)   For the suspension, revocation or refusal to renew or issue a license where the licensee or applicant for a license demands such hearing; or

"(D)   Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.425, 183.450, 183.460 and 183.470."

If a proceeding before an agency fits one of these four definitions, the APA binds the agency to certain procedures by which it must reach its decision, *viz.*, the agency must base its decision on a record of evidence that the contesting parties have an opportunity to develop, it must confine its decision to the evidence so developed, and it must explain how its decision complies with the law and is supported by the facts. ORS 183.415 to 183.470. Orders in contested cases are reviewed in the Court of Appeals for errors of legal interpretation, abuse of agency discretion and lack of substantial evidence to support the decision. Review is confined to the record. ORS 183.482(8). Court of Appeals review of contested cases presupposes a record developed by the agency.

The APA says little about that category of agency decisions called "orders in other than contested cases." All that is clear is that these decisions represent that large body of agency actions that are "orders," as that term is defined in ORS 183.310(5), but not orders resulting from one of the four kinds of proceedings defined as "contested cases" under ORS 183.310(2)(a). This court has used this negative criterion in the past. *See Oregon Business Planning Council v. LCDC,* 290 Or 741, 626 P2d 350 (1981) (where none of the four categories described in ORS 183.310(2)(a) apply, the hearing is a hearing other than in a contested case, as that term is used in the APA).

This category of cases (which could with equal accuracy be called actions, events or orders) was not even mentioned in the APA until after the Court of Appeals was created and assigned the task of reviewing contested cases. From 1957, when the first comprehensive APA was enacted, through 1969, both rules and orders in contested cases (the only types of orders mentioned) were reviewed by the circuit

court. The 1957 APA required the circuit court to review contested cases "without a jury as a suit in equity" with review "confined to the record." ORS 183.480(6) (1957). In addition, if the court reversed, it was required to make "special findings of fact based upon evidence in the record and conclusions of law indicating clearly all respects in which the agency's decision is erroneous." ORS 183.480(7) (1957).

In 1971, in response to the creation of the Court of Appeals in 1969 (Or Laws 1969, ch 198, § 1, as amended by Or Laws 1969, ch 591, § 262a), the legislature directed the Court of Appeals to review "contested cases" and send "orders other than contested cases" to the circuit courts. ORS 183.480(2) (1971). The circuit court was to conduct its review "without a jury as a suit in equity." ORS 183.480(6) (1971). The statute was ambiguous, and has remained so to this day.[10] From this general history of the labels for the two kinds of orders, we turn to a consideration of the arguments advanced by petitioners to demonstrate that the order in this case was one that could only be entered after a contested case.

*Petitioners' Theories*

■ ■ Deciding whether a proceeding is a contested case does not depend on the kind of hearing the agency actually conducted; the appropriate analysis is whether the proceeding qualified as a contested case under the APA. *Patton v. St. Bd. Higher Ed.*, 293 Or 363, 647 P2d 931 (1982). In response to a question from this court, the parties submitted memoranda on their interpretations of contested cases as defined in ORS 183.310(2)(a). Respondents asserted that this case is not included in any of the four categories of contested cases listed therein. Petitioners counter that this case falls into the categories described in ORS 183.310(2)(a)(A) and (D). Specifically, they contend that the textbook statute gives students a right to a certain standard of quality in textbooks and that the federal constitution bestows on them the right to be free from government interference with access to expressive materials. These are, according to petitioners, "individual legal rights, duties or privileges" which can be determined only after a

---

[10] Our decision here does not require that we dictate the procedure to be followed when this or any other case is reviewed in circuit court. The issue may or may not prove difficult for the parties once the case is before that forum.

contested case hearing. Alternatively, petitioners argue that the Board has provided by rule a hearing "substantially of the character required" in a contested case.

We agree with respondents that petitioners themselves do not come within the terms of any part of ORS 183.310(2)(a). The legislature charged the Board with setting standards and evaluating texts for compliance before approval; it did not, however, grant to any individual the right or power to compel the Board to act. If petitioners were seeking access to expressive material, their claim of constitutional right might have force. *See Va. Pharmacy Bd. v. Va. Consumer Council*, 425 US 748, 96 S Ct 1817, 48 L Ed 2d 346 (1976) (holding that consumers may assert their First Amendment protections against a state licensing board's rule prohibiting pharmacists from advertising the price of prescription drugs); *see also Board of Education v. Pico*, 457 US 853, 861-62, 102 S Ct 2799, 73 L Ed 2d 435 (1982) (a plurality of the Supreme Court prohibited a school board from banning books from a public school library, finding the ban violative of the students' constitutional right to receive information). However, petitioners do not seek access to expressive material; they seek to prevent its dissemination.

Even in the absence of constitutional or statutory individual rights, a "refusal to * * * issue a license" is an independent basis for a contested case hearing, upon the applicant's demand. ORS 183.310(2)(a)(C). The publisher, as the applicant seeking agency "approval * * * required by law to pursue any commercial activity, trade, occupation or profession," ORS 183.310(4), could demand a contested case hearing, if the Commission had recommended and the Board was contemplating rejecting a text. But subsection (C) does not entitle petitioners, who are not "applicants" or "licensees," to a contested case hearing. Ordinarily, government's approval of a party's request to be permitted to pursue an activity need not be preceded by contested case proceedings.[11]

Further, we disagree with petitioners that the Board's

---

[11] We do not have occasion here to consider whether a competitor seeking access to a license available to a limited number of applicants could participate in some way to contest approval of a competitor's license. *See Ashbacker Radio Co. v. F.C.C.*, 326 US 327, 66 S Ct 148, 90 L Ed 108 (1945) (allowing multiple applicants for a single license to participate in competing for grant of the license).

rule, OAR 581-11-070, provides a hearing "substantially of the character required" in a contested case, thus entitling them to such proceedings under ORS 183.310(2)(a)(D). An agency may oblige itself to contested case hearings if it identifies certain persons as parties separate from the general public, if it provides for a record of testimony and evidence from the parties that is subject to rebuttal and cross-examination, and if it binds itself to make a decision on the basis of evidence in the record. *See* ORS 183.415 to .470. But the hearing contemplated by the Board's rule does not have these essential characteristics.

The rule says only that challengers to adoption of a text may have an "opportunity to be heard" before the Board makes its decision. OAR 158-11-070(1). This could mean an opportunity as limited as submission of written views on a proposed decision. Or, in order to ensure its accountability to the public, an agency may proceed, as the Board did here, with a public hearing format so that persons may "be heard" and hear others in person with oral testimony. But this format does not require that all testimony and evidence be tested for relevance and truthfulness and challenged by cross-examination as would occur at a contested case hearing. With respect to the present decision, ORS 337.055 requires only that the Board reject any text that does not meet its criteria and guidelines "to the degree determined" by the Board. The Board may have a responsibility to explain in its order whether a particular text does so, but the basis for its decision is not limited, either by statute or rule, to an evidentiary record. Petitioners contentions are not well taken.

*The Dissent's Theory*

■        Normally, demonstrating that petitioner's contentions are not well taken would end the case. Here, however, there is an additional player. The dissent has formulated a new theory, never really advanced by petitioners — and certainly never advanced to the Board as a basis of a claim to entitlement to a more formal hearing. We shall now address that theory.

The essence of the dissent's argument is that, because *someone* (in this instance, the publisher) *could* be entitled to a contested case hearing in this case, petitioners *are* entitled to one. The dissent reaches this conclusion entirely on the

strength of one of the definitions of "party" in ORS 183.310(6):

" 'Party' means:

"(a)  Each person or agency entitled as of right to a hearing before the agency * * *."

This argument confuses two different concepts.

The first misunderstanding concerns what has occurred before the agency to date. So far, all that has occurred is that a textbook has been offered for approval, been approved by the Commission and, after an opportunity was afforded for public comment, approved by the Board. No one, not even the publisher, has had a contested case hearing. It is true that the publisher's constitutional guarantees of freedom of the press[12] and the "free expression of opinion"[13] are among the "individual legal rights, duties or privileges" that cannot be finally "determined" without contested case procedures. But there is no occasion for any such hearing as yet, and may never be.

Even if there were an occasion for a hearing, the hearing would not be automatic. The Board would be entitled to announce a tentative decision to deny approval of the textbook, subject to the publisher then asking for a hearing if it felt the reasons for denial were not legally sound. This case would then (but only then) become a proceeding involving "the refusal to * * * issue a license where the licensee or applicant for a license demands such hearing." ORS 183.310(2)(a)(C). And, even with the advent of such a contested case hearing, petitioners' participation would not be automatic.

This brings us to the second misunderstanding. The definition of "party" in ORS 183.310(6)(a) relied upon by the dissent is just that — a definition. It does not, standing alone, define or confer a right on anyone. The "person * * * entitled as of right to a hearing" referred to in that definition must

---

[12] Amendment I of the United States Constitution provides:

"Congress shall make no law * * * abridging the freedom of speech * * *."

[13] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever * * *."

depend on some other law to define both the "right" and the "hearing." There can be many kinds of "hearings," with a contested case being just one kind. Thus, unless the other law that identifies the person also declares that the person is entitled to a *contested case* hearing (as such a hearing is elsewhere defined in the APA), the definition of "party" relied on by the dissent is not relevant. Moreover, as already demonstrated in this opinion (and as the dissent appears to recognize), there *is no* other law that meets these criteria.

The definition of "contested case" in ORS 183.310(2)(a)(A) — the only subsection of that definition that even uses the word "party" — demonstrates this point. We repeat the subsection here for convenience:

"(2)(a) 'Contested case' means a proceeding before an agency:

"(A) In which the individual legal rights, duties or privileges of *specific parties* are required by statute or Constitution to be determined only after an agency hearing at which *such specific parties* are entitled to appear and be heard[.]" (Emphasis supplied.)

The use of "such" before the second reference to "specific parties" makes it clear that the second use of the phrase "specific parties" is not intended to expand the scope of that phrase from its first use in the definition. To be entitled to be a "party" to a contested case, a person's individual legal rights, duties or privileges must be at issue. As already demonstrated, that cannot be said of petitioners.

The dissent attempts to bootstrap its way around the foregoing by rationalizing that the agency's grant to petitioners (and to anyone else in Oregon or elsewhere, without any criteria for narrowing the potential field) of the right to say something — the right to "be heard," in a very broad and general sense — somehow transformed petitioners (and, as noted, anyone else of any description who also wanted to put in two cents worth, whatever its pertinence or value) into "parties." Parties to the hearing envisioned by the Board's rule, perhaps. But no law makes *that* hearing a *contested case.* And, without a law making it a contested case, petitioners are not helped.

The other relevant law also demonstrates the fallacy

of the dissent's theory. The legislature has declared a specific public policy dealing with the participation in contested cases by entities other than those automatically entitled to a hearing. That policy is found in another subsection of ORS 183.310(6):

"(6)   'Party' means:

"* * * * *

"(c)   Any person requesting to participate before the agency as a party or in a limited party status *which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result.*" (Emphasis supplied.)

The dissent ignores this subsection of the statute (and the public policy it embodies). That policy may be summarized this way: Even where there is already going to be a contested case hearing (and that is not true here), those not entitled by statute or Constitution to the hearing but who nonetheless wish to participate *may* be allowed to do so *if* the agency determines they have "an interest" in the outcome or they "represent a public interest in such result." This screening process is designed to make such hearings manageable, where they otherwise are going to occur. The dissent, however, would allow these petitioners a hearing when there otherwise would *not* be one and *without* any advance examination to determine if they are truly interested participants, or merely gadflies. Indeed, given the dissent's approach, the true gadflies will be hoping that no contested case is scheduled; if it were, they would doubtless be denied party or limited party status. As long as it is not, they can compel a full-scale hearing entirely on their own initiative.

The dissent in reality is attempting to create a *fifth* category of contested case under the definition in ORS 183.310(2)(a). That, however, is something only the legislature can do. Petitioners have no more right to a contested case hearing under this fictitious category than they have under the categories they have relied on themselves. The decision of the Board was not an order in a contested case.

## THE ORDER WAS AN ORDER IN OTHER THAN A CONTESTED CASE

The action of the Board, being neither a rule nor an order in a contested case, is — by a process of elimination —

an order in other than a contested case. *See Oregon Business Planning Council v. LCDC, supra.* Jurisdiction for judicial review of such orders is in the circuit court, not the Court of Appeals. ORS 183.484. The Court of Appeals should have dismissed this proceeding.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with instructions to dismiss.

**LENT, J.,** dissenting.

I agree with the majority that the Board's action is an order, not a rule. I disagree, however, on the characterization of that order.

There is no real dispute that the approval or disapproval of a textbook falls within the literal definition of a contested case in ORS 183.310(2)(a)(A) and (C), and that it would have to be conducted as a contested case if the agency proposed to deny approval and the publisher requested such a proceeding. The majority states, however, that a case need not be so conducted unless a person whose rights, duties, privileges, or license bringing the case under those subsections demands a contested case proceeding. Until this happens, the case may be described as a latent or embryonic contested case.

Whether petitioners, who could not themselves initiate a contested case, can inject themselves into a latent or embryonic contested case and trigger contested case proceedings depends on whether petitioners are "parties" as that term is defined in the Administrative Procedures Act. ORS 183.310(6) provides:

" 'Party' means:

"(a)   Each person or agency entitled as of right to a hearing before the agency;

"(b)   Each person or agency named by the agency to be a party; or

"(c)   Any person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result. * * *."

The Board has not "named" any person or agency a

party. Nor has any person requested party status. *See Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977); *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984). Nonetheless, the Board has provided by rule that "any person" who wishes to challenge adoption of a textbook is entitled to an opportunity to be heard. OAR 581-11-070. The rule does not invite mere expressions of personal opinions, as a "town meeting" type of hearing might allow. The rule requires a written "statement of the basis of the challenge," that is to say, a statement that tests the book against the preexisting criteria for textbooks. I believe this invitation makes petitioners parties as persons "entitled as of right to a hearing before the agency." ORS 183.310(6)(a).

The Board invited petitioners into what could be a contested case, should the publisher choose to contest it. Indeed, the fact that opponents appear and speak against textbook approval may provoke a "contest" by the publisher. The publisher would be entitled to an on-the-record decision based on evidence the publisher can offer and rebut. As I read subsection (a), persons "entitled as of right" to a hearing include not only those contemplated in the APA's definition of contested cases, that is, those individuals with legal rights at stake in the agency's decision, persons facing suspension or revocation of rights or privileges, applicants for or holders of licenses, or those to whom the agency has provided essentially a contested case hearing. It also includes persons to whom the agency, by rule, extends the right to a hearing.

I do not suggest that in the absence of its rule the Board would be obliged to hear these petitioners' comments in a contested case format. It would not. But here the Board offered people who will use the book, or who otherwise have a stake in what it teaches, an opportunity to match the book against the Board's criteria for textbooks. Having invited challengers into what could be a contested case, the Board can offer them no less. I believe that petitioners, as parties in this latent contested case, are entitled to contested case proceedings themselves.

The majority calls the Board's action an order in "other than [a] contested [case]," a term not defined in the APA and used only in the section describing circuit court jurisdiction of agency decisions. That sends this case to the

circuit court, where a judge must now determine, among other things, whether "the agency has erroneously interpreted a provision of law," and whether the order is "supported by substantial evidence in the record." ORS 183.484(4). The judge must do so without a record and without any explanation by the agency of its decision. The APA tells us only that "[t]he review shall proceed and be conducted by the court without a jury." ORS 183.484(3). This means, I suppose, that the circuit court must now conduct a trial and make its own determination whether the book meets the criteria. It is hard to see how this gains anything either for the Board, which is the responsible agency to consider any evidence of the shortcomings of a proposed textbook under its criteria, or for the courts, which are not ordinarily in the business of approving or disapproving textbooks.

Orders in "other than contested cases" should be avoided if possible, if their validity depends on facts and an agency is capable of making its own record. As footnote 8 of the majority opinion notes, the legislature has the opportunity to provide a solution.

Linde and Campbell, JJ., join in this dissenting opinion.