Argued and submitted December 13, 2022; transferred to Marion County Circuit Court pursuant to ORS 14.165(5)(a) January 25; on petitioners' petition for reconsideration filed February 7, respondents' response to petition for reconsideration filed March 17, and petitioners' reply to respondents' response to petition for reconsideration filed March 24, reconsideration allowed by opinion June 1, 2023

See 326 Or App 188, ___ P3d ___ (2023)

# DOUGLAS COUNTY,
a political subdivision of the State of Oregon;
Umpqua Fishery Enhancement Derby, Inc.,
an Oregon nonprofit corporation;
and Scott Worsley,
*Petitioners,*

*v.*

# OREGON FISH AND WILDLIFE COMMISSION
and Oregon Department of Fish and Wildlife,
an agency of the State of Oregon,
*Respondents.*

Marion County Circuit Court
22CV13979; N011096

525 P3d 504

This case was referred to the Court of Appeals from the Marion County Circuit Court, pursuant to ORS 14.165(1)(b), to establish jurisdiction. Petitioners sought judicial review by the circuit court of a decision by the Oregon Fish and Wildlife Commission (commission) that terminated a summer steelhead hatchery program. Petitioners contend that the commission's decision is either an order other than contested case subject to judicial review by the circuit court under ORS 183.484, or, instead, a rule subject to judicial review by the Court of Appeals under ORS 183.400. Petitioners also assert a separate claim under ORS 183.490, seeking a court order compelling the commission to fund and implement a summer steelhead fish trapping program at the Rock Creek Hatchery. *Held*: The Administrative Procedures Act (APA) does not confer jurisdiction to the Court of Appeals or the circuit court via ORS 183.484 because the decision to end the hatchery program is not an order. The APA also does not confer jurisdiction on the Court of Appeals to review the decision under ORS 183.400 because the decision is not a rule. The circuit court retains jurisdiction over the third claim, raised under ORS 183.490. The Court of Appeals returned the case to the circuit court to dismiss the APA claims for judicial review and to address the ORS 183.490 claim.

Transferred to Marion County Circuit Court pursuant to ORS 14.165(5)(a).

Dominic M. Carollo argued the cause for petitioners. Also on the memorandum was Nolan G. Smith and Carollo Law Group.

Alex Jones, Assistant Attorney General, argued the cause for respondents. Also on the memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anthony Broadman and Galanda Broadman, PLLC, and Richard Eichstaedt and Eichstaedt Law Office, PLLC, file the brief *amicus curiae* for Cow Creek Band of Umpqua Tribe of Indians and Confederated Tribes of the Coos, Lower Umpqua, and Suislaw Indians.

Craig J. Dorsay, Lea Ann Easton, Kathleen M. Gargan and Dorsay & Easton LLP, and Brett Kenney filed the brief *amicus curiae* for Confederated Tribes of Siletz Indians of Oregon and the Coquille Indian Tribe.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

LAGESEN, C. J.

Transferred to Marion County Circuit Court pursuant to ORS 14.165(5)(a).

**LAGESEN, C. J.**

This is a case in which petitioners seek to challenge under Oregon's Administrative Procedures Act (APA) a decision by the Oregon Fish and Wildlife Commission (commission). The commission decided to end a summer steelhead hatchery program at the Rock Creek Hatchery, which is located within the commission's North Umpqua fish management area. Petitioners contend that the commission's decision to terminate the program is either an order other than contested case subject to judicial review under ORS 183.484 or, instead, a rule subject to judicial review under ORS 183.400. Petitioners also assert a separate claim under ORS 183.490, seeking a court order compelling the commission to fund and implement a summer steelhead fish trapping program at the Rock Creek Hatchery.

The question whether the commission's decision to terminate the summer steelhead hatchery program is an order other than contested case, a rule, or neither one, is a question that clouds the issue of APA jurisdiction. If it is an order other than contested case, then the circuit court, not our court, has jurisdiction to review it under the APA. If it is a rule, then, ordinarily, our court has jurisdiction to review it. If it is neither, then the APA is not an on-ramp to judicial review of the commission's decision.

These questions caused the circuit court to doubt its jurisdiction, so the court referred the matter to us under ORS 14.165(1)(b). That provision permits a circuit court (in some instances) to "[r]efer the question to the Court of Appeals if the circuit court is in doubt whether there is another court or tribunal authorized by law to decide the case." For the reasons that follow, we conclude that the commission's decision to end the summer steelhead program is neither an order nor a rule. For that reason, the APA does not supply a mechanism for judicial review of the decision. We therefore transfer the case back to the circuit court to dismiss the APA claims for judicial review and to address the ORS 183.490 claim.

The relevant facts are largely procedural and not disputed.

In 2014, the commission adopted a fish management plan, the Coastal Multi-Species Conservation and Management Plan (CMP). ODFW, *Coastal Multi-Species Conservation and Management Plan* (*CMP*) (2014). The CMP "implements the State's strategy for protecting, enhancing and utilizing Oregon populations" of certain species of fish. OAR 635-500-6775(1). OAR 635-500-6775, the rule that governs the Oregon Department of Fish and Wildlife's (ODFW's or department's) implementation of the CMP, directs department staff to "consider and attempt to implement" certain management strategies described in the CMP and listed in the rule, including

> "[m]anage for wild fish emphasis or hatchery fish programs in the appropriate Management Areas as outlined in * * * the CMP and obtain Commission approval for starting new or eliminating existing hatchery programs in a management area * * *."

OAR 635-500-6775(6)(b). The CMP designates two hatchery programs for the North Umpqua management area, including one for summer steelhead. ODFW, *CMP* at 46, 58.

In January 2022, the North Umpqua Coalition (NUC), comprised of fly fishers and wild fish proponents, petitioned the commission for a declaratory ruling under ORS 183.410. The petition requested the commission to prohibit the department from "[r]eleasing hatchery steelhead smolts from the Cole Rivers Hatchery into the North Umpqua River watershed." The commission orally denied the petition based on, in its words, "deficiencies of the petition," and because an assessment of the program at issue was underway, something the commission planned to consider in April. Video Recording, Oregon Fish and Wildlife Commission, Feb 18, 2022, at 01:01:26, https://youtube.com/watch?v=MXws3GX2pi8&si=EnSIkaIECMiOmarE&t=3686 (accessed Jan 18, 2023).

As planned, the commission met to address the program assessment for the Rock Creek summer steelhead hatchery program in April. The commission heard extensive testimony about the program, including testimony from petitioners, members of the NUC, and others. After everyone who wanted to speak had been heard, one commissioner

moved to "direct the department to not release summer steelhead hatchery smolts in 2022 and, consistent with OAR 635-500-6775(6)(c), *** to direct the department to eliminate the Rock Creek Summer Steelhead hatchery program." Video Recording, Oregon Fish and Wildlife Commission, Apr 22, 2022, at 10:13:00, https://youtube.com/watch?v=9DihXupIBXA&si=EnSIkaIECMiOmarE&t=36780 (accessed Jan 18, 2023). The commission passed the motion with a 4-3 oral vote. Later, the commission published a press release online announcing the decision to eliminate the hatchery program.

Petitioners then filed this matter in Marion County Circuit Court. The petition combined four different claims.[1] The first two claims characterize the commission's decision as an order other than contested case under ORS 183.484 and seek judicial review of it under that provision. The third claim, brought under ORS 183.490, seeks to compel respondents to fund and implement a summer steelhead fish trapping program. The fourth claim characterizes the commission's decision as a rule and asserts that the decision should be invalidated under ORS 183.400 for failure to comply with applicable rulemaking procedures.

Respondents moved to dismiss the petition in its entirety. They asserted that the commission's decision was not an order other than contested case and that, therefore, ORS 183.484 did not authorize judicial review. They further asserted that the court lacked jurisdiction under ORS 183.400 because jurisdiction for ORS 183.400 rule-review proceedings is vested in the Court of Appeals. As for the ORS 183.490 claim to compel the commission to act, respondents did not dispute that the circuit court had jurisdiction to resolve that claim but asserted that petitioners failed to state an ORS 183.490 claim, requiring dismissal. The circuit court referred the matter to us to determine what court,

---

[1] We question whether the different avenues of APA review pleaded in the petition are properly characterized as "claims." The APA generally provides a procedural framework for obtaining judicial review of different types of agency actions and does not set forth substantive claims. No party has contested the propriety of seeking different types of APA judicial review or intervention in a single petition, so we do not address the extent to which that practice is consistent with the APA.

if any, has jurisdiction over the various forms of APA review sought in the petition.

Given that procedural posture, the primary issue before us is whether the commission's decision to end the summer steelhead hatchery program at the Rock Creek hatchery is an order subject to judicial review under ORS 183.484, or a rule subject to review under ORS 183.400. As we explain, it is neither one. That means that the APA does not confer jurisdiction to review the commission's decision on either our court or the circuit court.

*Whether the decision to end the hatchery program is an order.* For the purposes of the APA, an order is "any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency." ORS 183.310(6)(a). It includes "any agency determination or decision issued in connection with a contested case proceeding." *Id*.

The commission's decision in this case fails to meet the first element of an order because it is not "directed to a named person or named persons, *other than employees, officers or members of an agency*." ORS 183.310(6)(a) (emphasis added). As stated by the plain terms of ORS 183.310(6)(a), if the named person(s) at which the agency action is directed is internal to the agency, then the agency action cannot be characterized as an order for the purposes of reviewability. *See Gruszczynski v. Board of Higher Education*, 106 Or App 260, 262-63, 806 P2d 1168 (1991) (explaining that the respondent's decision to not renew the contract of an employee was not an order because it was directed at an employee of the respondent agency). To the extent the decision to end the hatchery program is directed at anyone, it is directed to the agency itself. Although the decision no doubt may affect persons who rely on the hatchery program—the way any reduction in services can affect people—it is not directed at those persons. *Cf. Oregon Env. Council v. Oregon State Bd. of Ed.*, 307 Or 30, 35-36, 761 P2d 1322 (1988) (explaining that although a decision to not approve a textbook was generally applicable to all elementary public schools, "it concerns but one book" and is directed at the named book and, effectively, the book's publisher). The hatchery program is a part of the

department's efforts to implement the CMP and is entirely managed by the agency. Accordingly, the decision to eliminate the program is, effectively, directed at the "employees, officers or members of [the] agency" who managed, and who will end, the program. Consequently, it is not an order for the purposes of ORS 183.310(6)(b) and is not reviewable as an order other than contested case under ORS 183.484.

Petitioners further contend that the decision to end the hatchery program was, in effect, the grant of the NUC's previous petition for a declaratory ruling and, because a ruling on such a petition would be an order, the contested decision should also be treated as an order. We are not persuaded. The fact that the commission's decision resulted in the agency action requested by the NUC's earlier petition is not sufficient, on its own, to make the decision conform to the definition of "order" for the purposes of an APA claim brought under ORS 183.484. *See* ORS 183.310(6). Beyond that, the commission's oral denial of the NUC petition, which rested in part on unspecified deficiencies, is not before us in this proceeding and it is far from clear that the commission would have had the authority under ORS 183.410 to grant NUC the relief it sought.[2]

*Whether the decision to end the hatchery program is a rule.* For the purposes of the APA, a rule is (1) any agency directive, standard, regulation or statement (2) of general applicability (3) that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. ORS 183.310(9). An amendment or repeal of a prior rule is also a rule, but "internal management directives, regulations or statements which do not substantially affect the interests of the public" are not. ORS 183.310(9)(a).

---

[2] ORS 183.410, the statute that authorizes agencies to issue declaratory rulings, provides, in relevant part: "On petition of any interested person, any agency may in its discretion issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it." An agency ruling under ORS 183.410 is binding only "between the agency and the petitioner on the state of facts alleged." It is difficult to see how the terms of this statute—which provide a mechanism for resolving disputes between agencies and individuals about how the law applies to a particular set of facts—could be read to authorize the agency to grant a petitioner's request to end this hatchery program.

Petitioners contend that, if the decision to end the hatchery program is not an order, it is because it was not "directed to a named person or named persons" and, consequently, must be generally applicable. If it is generally applicable, petitioners argue, it is a rule or an amendment of a rule.

We disagree. In *PNW Metal Recycling, Inc. v. DEQ*, 317 Or App 207, 211-13, 505 P3d 462, *rev allowed*, 370 Or 56 (2022), we explained that an agency makes a rule when it makes "a generally applicable, policy-based decision" that is not one that is "necessarily required" by a statute. In that case, the petitioner, a scrap metal recycling company, challenged an agency's decision to reinterpret an existing rule to change longstanding agency practice. We reasoned that the reinterpretation was an agency policy decision that was not "necessarily required by a statute or validly promulgated rule." *Id*. at 211. Furthermore, and relevant to the present matter, the new interpretation was generally applicable because the agency intended it to be applicable to all relevant scrap metal recycling companies in the future, not just the petitioner. *Id*. at 212-13. In other words, the agency's reinterpretation so changed the meaning of the rule that the agency had promulgated a new rule.

In the present case, there is no argument that the commission's decision to eliminate the summer steelhead hatchery program is applicable to all hatchery programs—or all of some other classification of programs—that fall under the commission's oversight. On the contrary, the decision applies only to the Rock Creek Hatchery located in the commission's North Umpqua fish management area. It is in no ordinary sense "generally applicable," and it does not change existing law in the way the agency action in *PNW Metal Recycling, Inc.* changed existing law.

Petitioners contend in the alternative that the decision amended a rule set out in the CMP and in OAR 635-500-6775(6)(b). Their argument goes as follows. The CMP designates the North Umpqua management area as a "two hatchery" area. ODFW, *CMP* at 46. OAR 635-500-6775(6)(b) refers to that designation and instructs the department to "obtain Commission approval for starting new or eliminating

existing hatchery programs in a management area \*\*\*." Petitioners claim that, together, the CMP and OAR 635-500-6775(6)(b) make the disputed hatchery program "necessarily required by a \*\*\* validly promulgated rule," that the decision to eliminate the program amends that rule, and consequently that the decision, as an "amendment or repeal of a prior rule," is itself a rule under ORS 183.310(9).

We are not convinced that the decision to end the hatchery program changes the existing rule. Although the CMP refers to the North Umpqua management areas as a "two hatchery" area, that designation appears to flow from fact—that there are two hatcheries in the area—rather than from legal principles. Moreover, with respect to law, OAR 635-500-6775(6)(b) specifically contemplates that the department will end hatchery programs because it provides the procedure for ending a hatchery program. It expressly states that the department must obtain commission approval to start or end hatchery programs. The commission's decision to end the hatchery program, an action expressly contemplated by the rule, did not change the rule—just as a decision by the commission to authorize a new hatchery program, as allowed by the rule, would not change the rule.

The fact that the decision is not generally applicable is determinative, both with regard to whether the decision is itself a rule or to whether it amends or repeals a rule. The other elements of the ORS 183.310(9) definition of "rule" need not be addressed, including any effects the decision has on public interests. Because the decision is not a rule, it is not reviewable under ORS 183.400.

*Petitioners' ORS 183.490 claim*. The parties do not dispute that the circuit court retains jurisdiction over petitioners' third claim, insofar as it is made under ORS 183.490. *Bay River v. Envir. Quality Comm.*, 26 Or App 717, 723, 554 P2d 620, *rev den*, 276 Or 555 (1976) (explaining that circuit courts have exclusive jurisdiction over ORS 183.490 claims). Respondents contend, however, that there is no rule or law that requires the department to implement the program that respondents seek to compel by their ORS 183.490 claim. Accordingly, respondents propose, *Bay River* may preclude any court's jurisdiction over that claim. That argument, as

respondents recognized below when they moved to dismiss for failure to state a claim, is essentially an argument that petitioners have failed to allege a viable ORS 183.490 claim. If respondents have stated, or by amendment could state, an ORS 183.490 claim, then the circuit court has jurisdiction to decide it. Whether respondents have stated a viable claim under ORS 183.490 is a question for the circuit court in the first instance.

In sum, the APA does not confer jurisdiction to this court or the circuit court with respect to petitioner's ORS 183.484 claims because the decision to end the hatchery program is not an order. The APA, via ORS 183.400, does not confer jurisdiction on us to review the decision to end the hatchery program because the decision is not a rule. The circuit court retains jurisdiction over the third claim, raised under ORS 183.490.

We note, however, that our determination that the agency's decision is not a rule or an order means only that the APA does not provide a mechanism for reviewing the commission's decision to end the hatchery program.[3] Our decision does not speak to the availability and viability of other avenues to relief.

For the foregoing reasons, we return the case to Marion County Circuit Court for proceedings consistent with this opinion.

Transferred to Marion County Circuit Court pursuant to ORS 14.165(5)(a).

---

[3] Respondents do not propose otherwise. During oral argument, when asked whether a finding that "the APA is not an available path to review this decision" would mean that petitioners would be free to seek remedies outside of the APA, respondents' counsel answered:

"That's correct, yes. If the APA would not apply, then APA exclusivity would not apply. I can't speak to whether or not, at this point, whether they would have standing or anything like that, but certainly if the APA does not apply, then the APA exclusivity would not bar them from at least trying to seek other remedies."