Argued and submitted November 23, 2009, affirmed March 16,
petition for review allowed October 6, 2011 (351 Or 216)

**KARUK TRIBE OF CALIFORNIA,**
a federally recognized organization;
and Friends of the River Foundation,
a California nonprofit organization,
*Petitioners-Respondents,*

*v.*

**TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,**
*Respondent-Appellant.*

Multnomah County Circuit Court
080202663; A139375

251 P3d 773

Keith M. Garza argued the cause and filed the briefs for appellant.

Thomas M. Christ argued the cause for respondents. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## SERCOMBE, J.

Tri-County Metropolitan Transportation District of Oregon (TriMet) appeals a general judgment entered on writ of review that reversed and annulled TriMet's decision to decline publishing on TriMet vehicles a display proposed by petitioners. Petitioners Karuk Tribe of California (Tribe) and Friends of the River Foundation (Friends) offered to pay TriMet for displaying a message about salmon restoration efforts. TriMet refused that offer based upon its advertising policy to accept only certain types of commercial advertisements and public service announcements for display. The reviewing court concluded that TriMet's decision violated Article I, section 8, of the Oregon Constitution because the advertising policy classified acceptable displays on the basis of their subject matter and transgressed the First Amendment to the United States Constitution because the advertising policy was not applied in a viewpoint neutral way.[1]

On appeal, TriMet contends that, in the context of a challenge to a government policy on the use of its property, where the government is acting in its proprietary capacity, Article I, section 8, should be interpreted consistently with the First Amendment. In that case, both constitutional provisions should be construed to allow content-based regulation of expression, so long as that regulation is reasonable and viewpoint neutral. In other words, TriMet would have us engage in the equivalent of a First Amendment forum analysis under Article I, section 8.[2]

---

[1] Article I, section 8, provides, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." The First Amendment similarly provides, in part, "Congress shall make no law * * * abridging the freedom of speech, or of the press[.]"

[2] The United States Supreme Court recently summarized the First Amendment's forum analysis in *Christian Legal Soc. Chapter v. Martinez*, ____ US ____ , 130 S Ct 2971, 2984 n 11, 177 L Ed 2d 838 (2010), where the Court stated:

> "In conducting forum analysis, our decisions have sorted government property into three categories. First, in traditional public forums, such as public streets and parks, 'any restriction based on the content of * * * speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest.' * * * Second, governmental entities create designated public forums when 'government property that has not

Petitioners respond that there is no support for a "proprietor exception" in either the text of Article I, section 8, or that provision's history and interpretive case law; instead, petitioners rely on the analytical framework of *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). Petitioners argue that, because TriMet's decision was based on the content of the proposed display, it violated Article I, section 8. Petitioners also argue that TriMet engaged in viewpoint discrimination and made a decision not reasonably related to the stated purposes of its advertising policy so as to violate the First Amendment. Because we agree with petitioners that TriMet's decision violated Article I, section 8, we affirm.[3]

TriMet is a mass transit district, organized and operating under the provisions of ORS chapter 267. It allows paid advertisements on the exterior of its buses and light rail vehicles. In August 2007, petitioners submitted the following display to TriMet that depicted three in-stream salmon facing a wall of electrical sockets:[4]

traditionally been regarded as a public forum is intentionally opened up for that purpose'; speech restrictions in such a forum 'are subject to the same strict scrutiny as restrictions in a traditional public forum.' * * * Third, governmental entities establish limited public forums by opening property 'limited to use by certain groups or dedicated solely to the discussion of certain subjects.' * * * As noted in text, '[i]n such a forum, a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral.' "

[3] Given that our resolution of this case under Article I, section 8, affirms the reversal and annulment of TriMet's decision, we need not address TriMet's arguments under the First Amendment. *See, e.g., State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 606, 215 P3d 847 (2009) ("As part of the 'first things first' methodology, we * * * consider state constitutional issues before we consider federal claims.").

[4] The trial court record contains two versions of the display that, except for a difference in the listed website address, appear to be identical in all respects. The parties have not assigned any significance to that difference in the listed website address and nor do we. Thus, for our demonstrative purposes here, we reproduce, in black and white, the full-color version of the display that was attached as an exhibit to the petition for writ of review.

TriMet permits only certain types of displays on its vehicles. TriMet describes those permitted displays in a policy adopted by its general manager that is designated as TriMet's Advertising Policy and Standards. Ultimately, petitioners' submission was rejected pursuant to the 2008 version of that policy.

Section I.A. of the 2008 Advertising Policy and Standards (the policy) provides that it is adopted by the general manager pursuant to ORS 267.140. ORS 267.140(2) confers authority on the general manager of a mass transit district to "[h]ave full charge of the administration of the business affairs of the district." By contrast, the district board is empowered by ORS 267.150 to exercise its "legislative authority * * * by ordinance," including the power to "enact police ordinances relating to the protection, use and enjoyment of district property and facilities."

Section I.B. of the policy states that its purpose is "to create definite, uniform Standards for the display of advertising on TriMet buses, light rail vehicles, facilities, and any other revenue vehicles or facilities owned, leased, controlled or operated by TriMet (hereinafter referred to as [ ]'Property')." In addition, section I.C. declares TriMet's intent "not to allow or cause any of its Property to become a public forum for the dissemination, debate, and/or discussion of public issues." Section I.D. further states:

"Acting in its proprietary capacity by allowing advertising on its vehicles and property and not as a regulator, TriMet seeks to advance certain interests including:

"(1)  Maximizing revenues to support programs and services through the sales of Advertisements on vehicles and property;

"(2)  Promoting the use of public transportation[;]

"(3)  Maintaining the safety of passengers;

"(4)  Protecting minors who travel on TriMet's transportation system; and

"(5)  Avoiding any potential identification of TriMet with the viewpoints of Advertisement on vehicles and property."

Regarding the establishment of particular standards and restrictions for advertisements submitted for display on TriMet property, section II of the policy provides that "TriMet only accepts Advertisements"; that " 'Advertisement,' as used in [the] policy, means a communication that promotes or offers goods or services"; and that "[t]he definition of Advertisement notwithstanding, TriMet may, in its discretion, accept 'Public Service Announcements' as defined herein." More particularly, section II.C. establishes that, if the proposed advertisement falls within one or more of 16 limiting categories, then that advertisement will not be displayed or maintained on TriMet property; the limiting categories include the following:

> "(9) Political. Campaign Speech. The Advertisement contains political campaign speech. For purposes of these Standards, the term 'political campaign speech' is speech that (1) refers to or supports a specific ballot question, initiative petition, or referendum, or (2) refers to any candidate for public office."[5]

(Underlining omitted.) Lastly, regarding public service announcements, section II.H. of the policy states:

> "The Advertising Contractor for TriMet will, from time to time, make unsold space available for public service announcements proposed by non-profit corporations that are exempt from taxation under Section 501(c)(3) of the Internal Revenue Code or by federal, state or local government agencies or subdivision thereof. * * * A public service announcement cannot contain a message that is retail or commercial in nature and shall comply with the Advertising Standards set forth in the Advertising Policy and Standards."

Petitioners' request was reconsidered by TriMet's advertising standards committee under the 2008 policy. The committee concluded that petitioners' submission was not an

---

[5] Other categories of precluded advertisements include matters related to: "false, misleading, or deceptive commercial speech," "unlawful goods or services," "unlawful conduct," material that "implies or declares an endorsement by TriMet of any service, product or point of view, without prior written authorization by TriMet (through its General Manager or designee)," "obscene material," "libelous speech, copyright infringement," the promotion or use of "tobacco" or "alcohol," "religion," traffic interference, distracting displays, "firearms," "violence," and " 'adult'-oriented goods or services."

allowed "advertisement." Petitioners appealed that decision to TriMet's general manager, Hansen, who concurred in the committee's findings that "the submission does not constitute advertising and is not permissible under TriMet's Advertising Policy and Standards * * * in effect as of January 8, 2008."

Following that final decision by TriMet, petitioners petitioned the trial court for a writ of review, alleging that TriMet's decision rejecting their proposed display constituted an unlawful restriction on speech in violation of Article I, section 8, and the First Amendment; the trial court issued the writ. TriMet filed a return to the writ and, later, an addendum to the return, after which the parties filed cross-motions for summary judgment.

In support of its motion for summary judgment, petitioners argued that TriMet's policy violated Article I, section 8, because it impermissibly discriminated based on content by allowing commercial speech while at the same time disallowing some forms of political speech. *See Robertson*, 293 Or at 412 (Article I, section 8, "forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception"). Petitioners also argued that TriMet's decision violated the First Amendment because it was not viewpoint neutral and was not reasonably related to the purposes of the forum.

In response, TriMet raised, as an initial matter, whether the Tribe, as a "sovereign," had standing in the writ of review proceeding to enforce "personal" speech rights under the state and federal constitutions. At the same time, TriMet acknowledged that, without the Tribe as a party, the case would nonetheless proceed with Friends as the sole petitioner. As to the merits, TriMet argued that, in the instant context, the trial court should construe Article I, section 8, under the methodology of *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992), so as to reach an interpretation that, in essence, would be consistent with First Amendment forum analysis. TriMet acknowledged that that construction necessarily included an element of "permissible content-based line drawing," and advocated that "this case is not a *Robertson* case." As to the First Amendment, TriMet argued that its

decision was constitutional because it was based on reasonable and viewpoint neutral content-based distinctions.

The reviewing court granted petitioners' motion for summary judgment and denied the cross-motion made by TriMet. In a letter opinion, the court explained that, as to Article I, section 8, it saw "no basis on which to recognize any 'government as proprietor' distinction." Accordingly, the court concluded that, because "the content of the [petitioners'] communication was the focus of the government decision," that decision was impermissible under Article I, section 8. The court also concluded that TriMet's decision "was not viewpoint neutral and was therefore invalid under the First Amendment." Thereafter, the trial court entered an order and, later, a general judgment concluding that TriMet's rejection of petitioners' display violated petitioners' free speech guarantees in the state and federal constitutions.

■■ On appeal, the parties renew the arguments they made below as to both the Tribe's standing and as to the Article I, section 8, analysis. As an initial matter, we reject TriMet's contentions concerning the Tribe's standing to proceed in this case. The Tribe obtained review of TriMet's decision under ORS 34.020. That statute sets the qualification or standing of a writ of review plaintiff to obtain review in circuit court. ORS 34.020 provides that, except for certain types of land use decisions, "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in [the writ of review statutes]." In *Kellas v. Dept. of Corrections*, 341 Or 471, 145 P3d 139 (2006), the Supreme Court determined that standing to obtain review of a rule adoption by an administrative agency was a function of statutory allowance: "Rather, the question is whether the legislature has empowered citizens to initiate a judicial proceeding to vindicate the public's interest in requiring the government to respect the limits of its authority under law." *Id.* at 484. Here, the legislature has authorized a "party" to a local government proceeding to obtain judicial review. The Tribe was a "party" to TriMet's process for review of acceptable advertising copy for display on mass transit vehicles and had standing to seek judicial review under ORS 34.020. Whether Article I, section 8, protected the Tribe's proposed

speech goes to the merits of its arguments about TriMet's policy and not to its standing to obtain a judicial decision about the policy's validity. Accordingly, we turn to the merits of the parties' arguments regarding the interpretation of Article I, section 8.

As noted above, Article I, section 8, provides, in part, that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever." In *Robertson*, the Supreme Court explained that that provision

"forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. Examples are perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants."

293 Or at 412 (citation omitted). The court later reiterated that

"article I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * It means that laws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end. * * * If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8."

*Id.* at 416-17 (citation omitted).

For nearly 30 years, the *Robertson* framework has been the guiding rubric by which Oregon appellate courts have resolved Article I, section 8, challenges to various laws

regulating constitutionally protected expression.[6] *See, e.g., State v. Moyer,* 348 Or 220, 230 P3d 7, *cert den,* ____ US ____ , 131 S Ct 326 (2010); *Vannatta v. Oregon Government Ethics Comm.,* 347 Or 449, 222 P3d 1077 (2009), *cert den,* ____ US ____ , 130 S Ct 3313 (2010); *Outdoor Media Dimensions v. Dept. of Transportation,* 340 Or 275, 132 P3d 5 (2006); *State v. Ciancanelli,* 339 Or 282, 121 P3d 613 (2005); *City of Eugene v. Miller,* 318 Or 480, 871 P2d 454 (1994). Rather than hew to the traditional *Robertson* framework, TriMet asks us instead to engage in a *Priest* analysis of Article I, section 8, and thereby construe that provision to allow government-drawn distinctions based on the content of expression where the government acts in its proprietary capacity. We decline TriMet's invitation.

■    Generally, our goal in construing an original provision of the Oregon Constitution is

> " 'to understand the wording [of the constitutional provision] in the light of the way that wording would have been understood and used by those who created the provision,' *Vannatta v. Keisling,* 324 Or 514, 530, 931 P2d 770 (1997), and to 'apply faithfully the principles embodied in the Oregon Constitution to modern circumstances as those circumstances arise,' *State v. Rogers,* 330 Or 282, 297, 4 P3d 1261 (2000)."

*State v. Hirsch/Friend,* 338 Or 622, 631, 114 P3d 1104 (2005). To reach that goal, *Priest* requires the examination of the wording, historical circumstances, and interpretive case law of the constitutional provision at issue. 314 Or at 415-16. As TriMet correctly notes, the construction of Article I, section 8, provided in *Robertson* was not based on the methodology of *Priest.*

However, the Supreme Court in *Ciancanelli* explained:

> "[I]n light of this court's longstanding reliance on the *Robertson* framework to resolve issues that arise under Article I, section 8, the burden of demonstrating that that

---

[6] Where the challenged law regulates the legally compelled display of a message that the government creates for its own regulatory purpose, *Robertson* is inapplicable because the protection of Article I, section 8, does not inure to that speech. *See Higgins v. DMV,* 335 Or 481, 490-91, 72 P3d 628 (2003).

framework is inconsistent with the intent of the people who drafted and adopted Article I, section 8, lies with the party challenging that framework—in this case, the state. * * * [A]fter applying the methodology set out in *Priest* to Article I, section 8, we are satisfied that the *Robertson* framework is justified. That framework is generally compatible with the 'natural rights' approach that we have described as a possible source of Article I, section 8. Moreover, it is more consistent with that approach than the malleable and indistinct 'balancing' test proposed by the state. We therefore will continue to analyze challenges brought under Article I, section 8, using the *Robertson* framework (including *Robertson*'s notion of a historical exception)."

339 Or at 314-15.

TriMet recognizes that *Ciancanelli* determined that the *Robertson* framework was "justified," but nonetheless contends that we should not apply that framework—in essence, that we should ignore binding Supreme Court precedent —because (1) the court in *Robertson* "was not thinking about governmental proprietorship when it issued its decision"; (2) "there is a fundamental inconsistency between *Robertson*'s 'non-content' approach and 'forum analysis' 'reasonable viewpoint neutral' content-based perspective"; and (3) it would make little sense to "compel governments acting as property owners[,] when opening up previously closed forums[,] * * * to try and fit their forum into the second *Robertson* category." We understand TriMet to argue that *Robertson*'s reach does not extend to circumstances where a government acts in its proprietary capacity and that therefore we should construe Article I, section 8, under the *Priest* methodology. In light of *Ciancanelli*, however, TriMet's arguments before us that this is not a *Robertson* case are unpersuasive.[7]

---

[7] TriMet does not contend that an advertising policy adopted by a governmental officer that only affects contractual relationships of that government does not enact or implement a "law" under Article I, section 8. Indeed, TriMet eschewed any such contention at oral argument. The challenged policy in this case declared the general manager's preferences for entering into contracts for the use of district property for advertising. The policy was adopted under the general manager's administrative authority under ORS 267.140(2) to "[h]ave full charge of the administration of the business affairs of the district" and not under the lawmaking powers conferred to the district board under ORS 267.150. Neither we nor the Supreme Court have decided whether a governmental policy adopted by an executive officer that only affects contractual relationships of that government, and does not enact or implement a general rule of civil conduct, qualifies as a "law," whose enactment

TriMet rejected petitioners' submission because its policy only allowed displays to be published on its vehicles if the display was an advertisement or a public service announcement. Accordingly, TriMet's decision to reject petitioners' display because it was not an advertisement was based on the application of a policy that explicitly regulated expression based on its content. Under the first category of *Robertson*, such regulation is impermissible under Article I, section 8, unless the restraint is wholly confined to some historical exception. The only argument offered by TriMet that its advertising policy restrictions fall within such a historical exception comes too late in this litigation.

■      TriMet, in a footnote in its reply brief, takes the position that, even if we disagree with its argument that this is not a *Robertson* case, it is not "game over." According to TriMet,

"[a]lthough it would present the Court with the task of driving a square peg into a round hole, TriMet has provided the Court with a historical basis predating the adoption of the Oregon Constitution that suggests that, had the framers or voters in 1857 thought about the issue, they would have acknowledged and embraced * * * the proprietary function doctrine applicable to municipal corporations that was well established in other jurisdictions by that time."

Charitably, we understand TriMet's statements in that regard to present an alternative argument for reversal of the trial court's decision—that, under the first category of *Robertson*, there *is* a government as proprietor historical exception to the reach of Article I, section 8. We do not reach the merits of that argument for two reasons: not only did TriMet fail to preserve that argument below, but, as we have often had occasion to remind others, "[a] party may not raise an issue for the first time in a reply brief." *See Johnson v. Best Overhead Door, LLC*, 238 Or App 559, 563 n 2, 242 P3d 740 (2010).

---

or enforcement is constrained by Article I, section 8. It may be that the relevant "law" here is ORS 267.140(2), empowering the general manager to adopt the policy in question. As we have said, however, any legal distinction about the meaning of a "restricting" or "restraining" "law" under Article I, section 8—although related to TriMet's "government as proprietor" thesis—is outside the legal questions presented to the reviewing court below and advanced on appeal.

The trial court did not err in concluding that TriMet's advertising policy violated Article I, section 8, to the extent that it classified speech on the basis of its content, notwithstanding that the policy regulated the use of government property.

Affirmed.