Argued and submitted October 3, affirmed December 21, 1988, reconsideration denied April 28, petition for review pending 1989

ASSOCIATED OREGON VETERANS et al,
*Appellants,*

*v.*

DEPARTMENT OF VETERANS' AFFAIRS,
*Respondent.*

(86C-12404; CA A46714)

766 P2d 1040

James M. Brown, Salem, argued the cause for appellants. With him on the brief was Enfield, Guimond & Brown, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff borrowers brought this action for declaratory and injunctive relief, seeking a determination of their rights under their farm and home loan agreements with defendant (DVA). They appeal from a summary judgment granted in favor of DVA. We affirm.

Between July, 1971, and August, 1982, plaintiffs executed notes secured by mortgages. Each note provided for a variable interest rate, a specific date on which the loan would be paid off and monthly payments that were to be "applied first as interest on the unpaid balance, the remainder on the principal." Each mortgage also contained a modification clause:

> "It is distinctly understood and agreed that this note and mortgage are subject to the provisions of Article XI-A of the Oregon Constitution, ORS 407.010 to [ORS] 407.210 and any subsequent amendments thereto and to all rules and regulations which have been issued or may hereafter be issued by the Director of Veterans' Affairs pursuant to the provisions of ORS 407.020."

Between 1971 and 1979, DVA distributed brochures to prospective borrowers which stated that an increase in the interest rate would not alter monthly payments but would extend the term of the loan. In October, 1985, after the legislature authorized DVA to increase its interest rates, it raised plaintiffs' rate one percent and increased their monthly payments.

In November, 1985, plaintiffs brought an action against DVA, contending that DVA's promise in the brochures limited its power to change unilaterally their monthly payments and that DVA could only extend the amortization periods of their loans. *See Associated Oregon Veterans v. DVA,* 300 Or 441, 443, 448, 712 P2d 103 (1985). The Supreme Court agreed and held that DVA could enforce its increased interest rates, but could not increase monthly mortgage payments without the mortgagor's consent. 300 Or at 450.

In compliance with that holding, DVA gave plaintiffs the option either to consent to higher monthly payments or to extend the amortization period. That election had to be made by May 31, 1986. In April, 1986, DVA informed plaintiffs that

their loan balances would never decrease, unless they chose to increase their monthly payments. Plaintiffs elected to retain their current monthly payments and to extend the amortization period of their loans. In February, 1987, after completing its "final loan processing calculations," DVA informed some borrowers that their loans would extend "indefinitely beyond the scheduled pay-off date," that is, their loan balances would never decrease, and informed others that their loan balances would actually increase each year.

Plaintiffs now contend, among other things, that DVA has breached the loan agreements, which specified a pay-off date, because it used "accounting methods" that preclude amortization of their loans. In essence, plaintiffs now contend that, although DVA may increase interest rates, it may neither increase the monthly payments nor extend the pay-off dates. In short, DVA may never collect the increased interest added to the loan principal. The contracts provide no fair basis for that contention. We conclude that all of plaintiffs' arguments regarding that issue are without merit.

We address plaintiffs' fourth and fifth assignments of error, in which they argue that three of DVA's decisions constitute "rules" under the Administrative Procedures Act, *see* ORS 183.310(8),[1] and that, because DVA failed to comply with the rulemaking procedures in ORS 183.335, those "rules" are invalid. The three contested matters are: (1) the application of retroactive interest rate increases, (2) the adoption of "accounting methods" that result in loans not amortizing and (3) the imposition of an election between increasing the monthly payments or extending the terms of the loans.

DVA's three decisions are not "rules" under ORS 183.310(8).[2] The first two were merely specific applications of

---

[1] ORS 183.310(8) provides, in relevant part:

" 'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule[.]"

[2] The parties submitted supplemental briefs on the effect, if any, of *Oregon Env. Council v. Oregon State Bd. of Ed.* 307 Or 30, 761 P2d 1322 (1988), in which the Supreme Court held that the decision of the State Board of Education to approve a textbook was not a "rule" within the meaning of ORS 183.310(8), but was an "order" in other than a contested case. ORS 183.480(2). 307 Or at 36, 43-44. We conclude that that case is inapposite.

existing unchallenged rules, OAR 274-20-341(3) and OAR 274-20-387. An administrative agency need not engage in the formalities of rulemaking if its directive is merely an application of an existing rule and if the existing rule necessarily requires the result set forth in that directive. *Burke v. Public Welfare Div.*, 31 Or App 161, 165, 570 P2d 87 (1977). In order to prevail, plaintiffs must show that an existing rule is susceptible to a reasonable interpretation other than that given by DVA. 31 Or App at 166.

■ Under the modification clause, plaintiffs' loans are subject to all existing and future rules issued by the Director of DVA. OAR 274-20-341(3) provides, in relevant part:

"(f) *Effective January 1, 1986,* the interest rate on certain loans shall be changed as follows:

"(A) The interest rate on 6.2 percent loans becomes 7.2 percent.

"(B) The interest rate on 6.7 percent loans becomes 7.7 percent." (Emphasis supplied.)

DVA's April, 1986, decision to apply interest rate increases retroactively to January 1, 1986, was nothing more than an application of the contract provision and that rule.

■ DVA's statement that plaintiffs' loans would not amortize was merely an explanation of what necessarily followed from the application of OAR 274-20-387 to the loan agreements and plaintiffs' election not to increase their payments. That rule provides, in part:

"The Director of Veterans' Affairs may adjust payments and/or other terms of the loan under the following conditions:

"* * * * *

"(2) A change in the interest rate and/or insurance premiums.

"* * * * *

"(4) When the balance of the loan will not amortize within the terms of the security document."

The amortization period of a loan is a "term of the loan" which DVA is authorized to adjust. Futhermore, plaintiffs, by their refusals to elect to increase their monthly payments, have necessarily chosen to stop the amortization of their loans. When, as in this case, there is an increase in interest

rates as a result of which the interest due each month equals or exceeds the monthly payment, the principal of the loan will never decrease, because none of the monthly payment will apply to the principal. DVA has simply applied the provision in the loan agreement that monthly payments are to be applied first to the unpaid interest and then to the principal.

Plaintiffs propose two alternative "accounting methods": The interest increase could "be reserved and deferred to the end of the loan term and then paid-off" and "the variable rate of interest could be limited to an increase consistent with the continuing retirement of principal." We conclude that neither proposal is consistent with the terms of the loan agreement and the amount of the interest rate increase DVA adopted in OAR 274-10-341(3). Because DVA applied an existing rule, it was not required to engage in additional rulemaking.

■ Plaintiffs next complain that DVA could not grant plaintiffs the option either to increase monthly payments or to extend the length of the loan without following rulemaking procedures. DVA merely implemented the court's directive in *Associated Oregon Veterans v. DVA, supra,* under which monthly payments could not be increased without the borrower's consent. When the court directed DVA to give plaintiffs the choice between higher monthly payments or extended amortization periods, DVA simply complied. It was not required to promulgate an administrative rule before it obeyed the court's mandate.

Affirmed.