ARLEN PORTER SMITH,
*Petitioner,*

*v.*

TWO RIVERS CORRECTIONAL INSTITUTION,
*Respondent.*

A147284 (Control), A152303

312 P3d 568

Arlen Porter Smith filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

In this proceeding pursuant to ORS 183.400(1), petitioner challenges the validity of what he contends are administrative rules adopted by respondent Two Rivers Correctional Institution (TRCI). We dismiss some of petitioner's challenges and hold some of the challenged material invalid.

Our review under ORS 183.400 is limited in scope to "the face of the rule and the law pertinent to it." *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992); *see also* ORS 183.400(3) (in facial rule challenge, court may examine only the rule, statutory provisions authorizing the rule, and documents bearing on compliance with rulemaking procedures). We may declare a rule invalid only if we conclude that the rule violates constitutional provisions, exceeds the agency's statutory authority, or was adopted without compliance with applicable rulemaking procedures. ORS 183.400(4); *Estes v. Dept. of Corrections*, 210 Or App 399, 401, 150 P3d 1088, *rev den*, 342 Or 523 (2007). Here, petitioner asserts as the basis for his challenge only the last ground, *viz.*, failure to comply with applicable rulemaking procedures.

Petitioner initially filed a petition for judicial review challenging the "Two Rivers Correctional Institution Medium Housing Unit Regulations" (TRCI housing unit regulations). We assigned that proceeding case number A147284. Petitioner then expanded his challenge to include an excerpt from an Oregon Department of Corrections newsletter (ODOC newsletter) that discussed an upcoming change to the "Rule on Mail (Inmate)" related to "clippings and copies displaying nude subjects."

In August 2012, TRCI replaced the TRCI housing unit regulations with "housing unit guidelines" (TRCI housing unit guidelines). TRCI then moved to dismiss the proceeding in case number A147284 on the ground that it had withdrawn the TRCI housing unit regulations and, therefore, the proceeding was moot. The Appellate Commissioner granted TRCI's motion to dismiss petitioner's challenge to the TRCI housing unit regulations. However, the Appellate

Commissioner noted that the ODOC newsletter appeared to cover a topic—possession of images of nude subjects—not covered by the TRCI housing unit regulations. Accordingly, the Appellate Commissioner concluded that the withdrawal of the TRCI housing unit regulations did not render moot petitioner's challenge to the ODOC newsletter and denied TRCI's motion to dismiss as to that challenge. The Chief Judge granted reconsideration of the Appellate Commissioner's ruling on TRCI's motion to dismiss as to petitioner's challenge to the ODOC newsletter but deferred its disposition to this department, as the department considering the proceeding on its merits.

Petitioner filed a second petition for judicial review challenging the TRCI housing unit guidelines. We initially treated that second petition as a separate case, assigning that proceeding case number A152303, but later consolidated it with the first proceeding.

Petitioner's initial petition has been dismissed as moot as to his challenge to the TRCI housing unit regulations, and we do not consider that challenge further. We now dismiss petitioner's initial petition as to the challenge to the ODOC newsletter.[1] As to petitioner's second petition for judicial review—challenging the TRCI Housing unit guidelines—we conclude that some of the challenged guidelines are rules and, because they were adopted without formal Oregon Administrative Procedure Act (APA) rulemaking procedures, hold them invalid. Some of the challenged guidelines, on the other hand, are not rules and, accordingly, we dismiss petitioner's challenges to those guidelines.

We first address petitioner's challenge to the ODOC newsletter. The challenged part of the newsletter was issued sometime before September 30, 2010, and states, in its entirety:

"**Clippings and Copies via the Mail:**

"Recently there has been a marked increase in the number of magazine clippings and copies printed from the internet being sent to inmates. The bulk of these items display

---

[1] Because we dismiss as to that challenge, we deny TRCI's motion to dismiss as to that challenge as moot.

subjects who are nude and posed in a sexually provocative manner. Further, there is considerable evidence that these pictures are being exchanged, bartered, or sold in violation of the Rule on Property (Inmate).

"The Rule on Mail (Inmate) is to be modified. Changes to the Rule on Mail (Inmate) will be Temporarily Adopted. Effective September 03 [*sic*], 2010, Clippings and copies displaying nude subjects will not be allowed. Clippings and copies displaying nude subjects currently in your possession must be sent home or disposed of by September 30, 2010. As of October 01, 2010, clippings and copies displaying nude subjects will become contraband and confiscated if discovered.

"Other provisions of the Rule on Mail (Inmate) will not be changed at this time. The sections of the Rule on Mail (Inmate) governing personal photographs and publications will be unaffected by these changes.

"Please contact Randy Greer at Central Office if you have concerns or questions about this."

As amended, OAR 291-131-0025(11)(b) includes the following provision:

"(D)  Freestanding Nude or Partially Nude Images: Newspaper and magazine clippings, photocopies, printed web pages, drawings, photographs, and other media with nude or partially nude subjects, whether human or anime (i.e., cartoon), that depict or display male or female genitalia, pubic area or anus, or expose the female areola, may not be attached to or enclosed in correspondence to inmates."

Petitioner does not, at this time, challenge the prohibition on inmates receiving nude images in the mail. Instead, petitioner challenges that part of the ODOC newsletter that is not addressed directly in OAR 291-131-0025(11), that is, this sentence: "As of October 01, 2010, clippings and copies displaying nude subjects will become contraband and confiscated if discovered" (the "possession sentence"). In petitioner's view, that sentence goes beyond OAR 291-131-0025(11) by prohibiting possession of nude images that were received before the rule amendment went into effect. In petitioner's view, the possession sentence of the ODOC newsletter is a rule that was adopted without compliance with APA rulemaking procedures.

We lack jurisdiction to consider petitioner's challenge to the possession sentence of the ODOC newsletter because it is not a rule. Under ORS 183.400(1), the Court of Appeals may, upon petition, determine the "validity of any rule." The legislature has defined what is—and what is not—a rule as follows:

> "'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:
>
> "* * * * *
>
> "(f)  Rules of conduct for persons committed to the physical and legal custody of the Department of Corrections, the violation of which will not result in:
>
> "(A)  Placement in segregation or isolation status in excess of seven days.
>
> "(B)  Institutional transfer or other transfer to secure confinement status for disciplinary reasons.
>
> "(C)  Disciplinary procedures adopted pursuant to ORS 421.180."

ORS 183.310(9). Accordingly, we may review certain directives and the like, but we may review a rule of conduct for people in ODOC custody only if violation of the rule of conduct may result in the disciplinary sanctions or procedures specified in ORS 183.310(9)(f).

First, we note that, by its own terms, the ODOC newsletter does not fit within the general definition of a "rule," that is, a "directive, standard, regulation or statement of general applicability." Instead, the newsletter describes a rule and explains how it has been modified. It does not, itself, create or amend a rule. Announcements of rule changes are not themselves rules. Because the newsletter is not a rule under the general definition in ORS 183.310(9), we lack jurisdiction to review it.

Second, as we explained in *Burke v. Public Welfare Div.*, 31 Or App 161, 165, 570 P2d 87 (1977), "[t]here is no

reason to require the formalities of rulemaking whenever an agency undertakes to explain the necessary requirements of an existing rule." Considering agency "informal embellishments" of validly promulgated rules, we suggested that agencies may, without engaging in formal rulemaking, "explain[] what [i]s necessarily required by the existing rules." *Id.* at 164-65. We concluded that "an agency's pronouncement of how a validly promulgated rule operates in a specific context need not itself be promulgated as a rule if the existing rule *necessarily requires* the result set forth in that pronouncement." *Id.* at 165 (emphasis added).

Here, the ODOC rules that were in place at the time that OAR 291-131-0025(11) was amended, considered as a whole, necessarily required that possession of previously received nude images was prohibited. At that time, OAR 291-105-0015(1)(e) prohibited inmates from possessing "unauthorized sexually explicit material." At the same time that OAR 291-131-0025(11) was amended, OAR 291-131-0035(1)(a) was amended to define "sexually explicit material" to include the following:

> "(D) Freestanding Nude or Partially Nude Images: Newspaper and magazine clippings, photocopies, printed web pages, drawings, photographs, and other media with nude or partially nude subjects, whether human or anime (i.e., cartoon), that depict or display male or female genitalia, pubic area or anus, or expose the female areola, may not be attached to or enclosed in correspondence to inmates."

Under OAR 291-131-0035, "sexually explicit material" is "prohibited mail [that] shall be confiscated or returned to the sender." Under the rules in place when OAR 291-131-0025(11) was amended, read together, inmates were prohibited from possessing nude images. Accordingly, the possession sentence of the ODOC newsletter is a pronouncement of the necessary effect of valid rules and is not itself a rule that was subject to the formalities of rulemaking.

Finally, even if we were to conclude that the possession sentence of the ODOC newsletter was a rule under the general definition of "rule" in ORS 183.310(9), it would be unreviewable under the exception for ODOC rules of conduct because its violation does not result in one of the disciplinary

sanctions or procedures specified in ORS 183.310(9)(f). The possession sentence of the ODOC newsletter provides for only one consequence for its violation: confiscation of the prohibited material. The possession sentence of the ODOC newsletter does not provide that violation will result in any of the consequences specified in ORS 183.310(9)(f). On its face then, the possession sentence of the ODOC newsletter is—at most—a rule of conduct that we may not review. *See Smith v. Dept. of Corrections*, 251 Or App 775, 777, 284 P3d 1244 (2012), *rev den*, 353 Or 533 (2013) (notice of rights that provided, as sole consequence of violation, for exclusion from participation in a hearing was a rule of conduct, violation of which did not result in disciplinary sanctions identified by ORS 183.310(9)(f)).

Petitioner generally asserts that "prisoners are subject to potential placement in disciplinary segregation for periods in excess of seven days for alleged violations of the challenged institutional rules." However, that assertion finds no support in the possession sentence of the ODOC newsletter itself. *See Smith*, 251 Or App at 777 (violation of notice of rights that provided that inappropriate behavior could lead to expulsion from hearing did not result in disciplinary sanctions and was not reviewable in facial rule challenge). Even if we view the possession sentence in light of other ODOC rules, we do not perceive that any other ODOC rules would result in an inmate being subject to any of the disciplinary sanctions or procedures specified in ORS 183.310(9)(f) for violation of the possession sentence of the ODOC newsletter. At most, the possession sentence is a rule of conduct, the violation of which does not result in any of the disciplinary sanctions or procedures specified in ORS 183.310(9)(f) and is, accordingly, unreviewable in a facial rule challenge.

We turn to petitioner's challenge to the TRCI housing unit guidelines. In his petition for judicial review, petitioner states that he is challenging rules "denominated as Housing Unit Guidelines and/or an Inmate Orientation Handbook." He attaches the following "challenged writings": (1) TRCI Inmate Orientation Package (the TRCI orientation package), (2) TRCI "Housing Unit Guidelines," (3) TRCI "Minimum Housing Guidelines," (4) TRCI "Housing Unit

Guidelines, Housing Unit 22," and (5) TRCI "Housing Unit Guidelines, Disciplinary Segregation Unit." We refer to those challenged writings collectively as the "TRCI housing unit guidelines."

Petitioner contends that the TRCI housing unit guidelines are rules that are not subject to the exemption in ORS 183.310(9)(f) for rules of conduct that will not result in the disciplinary sanctions or procedures specified in ORS 138.310(9)(f)(A) to (C). To the contrary, he asserts that, by their terms in context and in practice, violation of the guidelines can—and does—result in placement in segregation or isolation for more than seven days. And petitioner argues, because the guidelines were adopted without required APA rulemaking procedures, they are invalid.

TRCI responds that we should reject petitioner's challenge because he has challenged the TRCI housing unit guidelines as a whole. TRCI first contends that petitioner has failed to explain why the guidelines are "rules" within the general definition in ORS 183.310(9). In addition, in the absence of challenges to particular guidelines, TRCI argues that it cannot meaningfully address whether the provision is a "rule" or an unreviewable rule of conduct. TRCI acknowledges that petitioner has mentioned several particular guidelines but argues that he has failed to establish that those provisions are "rules" within the general definition in ORS 183.310(9). In addition, TRCI asserts that those guidelines are not reviewable rules because (1) those guidelines are "orders," not "rules," (2) those guidelines are "rules of conduct" that are expressly excluded from the statutory definition of the "rules" that we have jurisdiction to review in a facial challenge, and (3) most of those guidelines are merely applications of existing rules and, accordingly, need not have been adopted through formal APA rulemaking.

At a minimum, a petitioner in a proceeding under ORS 183.400(1) challenging rules that could be unreviewable ODOC "rules of conduct" must identify with particularity the challenged "rules" so that the respondent can meaningfully respond and so that we may ascertain whether the challenged provisions fall within the general definition of "rules" and, if so, whether they are nonetheless unreviewable

because their violation will not result in the disciplinary consequences or procedures specified in ORS 183.310(9)(f). As TRCI notes, petitioner challenges the TRCI housing unit guidelines as a whole. The TRCI housing unit guidelines comprise 92 pages of single-spaced type and cover a myriad of topics. Just as in other contexts we may decline to search the record in order to find an error or to determine whether it was preserved, ORAP 5.45(4)(c), we will not search the TRCI housing unit guidelines to identify which, if any, of them are reviewable rules. We accordingly dismiss petitioner's challenge in so far as he challenges the TRCI housing guidelines as a whole. *See, e.g., Horton v. Nelson,* 252 Or App 611, 621, 288 P3d 967 (2012) (declining to address undeveloped argument).

However, as noted, petitioner points to several specific provisions of the TRCI housing unit guidelines, which we number for convenience:

- From the TRCI Housing Unit Guidelines:

  (1) "During mandatory cell in times you are to report directly to your cell, or be subject to disciplinary action."

  (2) "Inmates are not to loiter in the weight area, or on the exercise equipment. If it is not actively used inmates are not to be at or on it. Slamming of weights is strictly prohibited and subject to disciplinary action."

- From the TRCI Minimum Housing Guidelines:

  (3) "Inmates shall not alter or otherwise tamper with or use any personal property item for other than the items [*sic*] intended purpose. Unauthorized alterations or use of an authorized personal property item for other than its intended purpose may result in confiscation of the item and/or disciplinary action. (Including empty containers)."

  (4) "Photographs that are taken on the housing unit will be taken in the designated Recreation Yard area only. Up to 4 inmates are allowed in the picture. * * *

  "* * * * *

  "d. Photographs depicting prohibited behavior will result in the confiscation of the photograph and a misconduct report submitted."

- From the TRCI Housing Unit Guidelines, Housing Unit 22:

  (5)  "Failure to comply with the above vending procedure may result in a suspension of visiting privileges and/or a misconduct report being submitted."

- From the TRCI Housing Unit Guidelines, Disciplinary Segregation Unit:

  (6)  "You are required to be dressed and ready to receive and return your food tray during meal times. Failure to do so may result in disciplinary action being taken. You will have nothing in your hands when staff opens the tray slot. If you have items in your hands and refuse to put the item down, you will be subject to disciplinary action."

  (7)  **"FAILURE TO COMPLY WITH THESE AND ALL OTHER REQUIREMENTS MAY RESULT IN APPROPRIATE ACTION BEING TAKEN, INCLUDING THE SUBMISSION OF A MISCON-DUCT REPORT(S)."**

(Boldface and punctuation as in original.)

We have little trouble concluding that the TRCI housing unit guidelines that we have numbered (1) through (6) fit within the general definition of "rule" in ORS 183.310(9); *viz.*, "any agency *directive*, standard, *regulation* or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency." (Emphasis added.) Until recently, the guidelines were in fact called "regulations." Each of the cited guidelines tells inmates what they may and may not do; that makes them, at a minimum, "directives." *See Webster's Third New Int'l Dictionary* 641 (unabridged ed 2002) (defining "directive," as pertinent, as a "pronouncement urging or banning some action or conduct"). The guideline that we have numbered (7), however, does not fit within the general definition of "rule." That provision is not a directive telling inmates what they may and may not do; instead, it is a general provision that indicates what consequences may follow from failure to comply with conduct directives. Because we conclude that the TRCI housing unit guideline that we have numbered (7) is not a "rule" for purposes of

ORS 183.310(9), we dismiss petitioner's challenge as to that provision.

As to the remaining TRCI housing unit guidelines, TRCI first argues that the specified TRCI housing unit guidelines are not "rules" because they are "orders" as defined in OAR 291-105-0010(29). OAR 291-105-0010(29) defines an "order" as

"[a]ny direction given to an inmate that directs or forbids the doing of some act over which the inmate has control. An order may be written, verbal or gestured communication (including all Department of Corrections functional unit rules and procedures; all federal, state and local laws; * * * and court ordered terms and conditions)."

TRCI contends that, to the extent that the specified TRCI housing unit guidelines direct an inmate to engage in or refrain from specific conduct, that direction is an "order" under OAR 291-105-0010(29) and not a "rule" as defined in ORS 183.310(9).

TRCI's argument fails to recognize that the issue in this rule challenge is the nature of the directives for purposes of the APA. The specified TRCI housing unit guidelines fit within the general APA definition of "rules." To the extent that TRCI could be understood to argue that the specified TRCI housing unit guidelines are "orders" under the APA—and consequently could not also be considered to be "rules" under the APA—we reject that argument for reasons similar to those expressed in *Smith v. Board of Parole*, 250 Or App 345, 348-50, 284 P3d 1150 (2012). As we explained in *Smith*, ORS 183.310(6)(a) defines "order," in part, as an "agency action * * * *directed to a named person or named persons*[.]" *Id.* at 349 (internal quotation marks omitted; emphasis added). As in *Smith*, the content of the specified TRCI housing unit guidelines is generalized and applicable to a large category of people; those guidelines are not directed to a named person and, accordingly, those provisions are not "orders" under the APA. TRCI's argument on this point fails to convince us that the specified TRCI housing unit guidelines are not "rules" under the general definition in the APA.

Second, TRCI contends that, even if the specified TRCI housing unit guidelines fit within the general definition of "rules" in ORS 183.310(9), they are nonetheless unreviewable ODOC "rules of conduct." ODOC "rules of conduct" are not "rules" for APA purposes if their violation will *not* result in the disciplinary sanctions or procedures specified in ORS 183.310(9)(f). Petitioner responds that, by their terms in context and in practice, violation of the TRCI housing unit guidelines can—and does—result in placement in segregation or isolation for more than seven days. TRCI remonstrates that the specified TRCI housing unit guidelines, standing alone, do not impose any particular consequence for their violation. TRCI further notes that the TRCI orientation package states that, for guideline violations at TRCI, "[a] Disciplinary Hearing will be conducted in accordance with the Department Rule of Prohibited Inmate Conduct and Processing Disciplinary Actions OAR 291-105." TRCI then continues by noting that a "grid" provided in ODOC rules identifies the penalties that can be imposed for particular guideline violations. TRCI reasons that, because neither that grid—nor any other source that sets out penalties—mentions or incorporates any TRCI housing unit guidelines, there is no basis from which to conclude that violation of the guidelines may lead to a sanction of segregation in excess of seven days, and, accordingly, the guidelines are unreviewable rules of conduct.

TRCI assumes—as does petitioner, for that matter—that the only consequence that will make an ODOC rule of conduct reviewable as a rule is if a violation of the rule can lead to the placement of inmates in segregation for more than seven days. However, that assumption is incorrect. ORS 183.310(9)(f) provides that "rule" does not include ODOC rules of conduct, the

"violation of which will *not* result in:

"(A)  Placement in segregation or isolation status in excess of seven days.

"(B)  Institutional transfer or other transfer to secure confinement status for disciplinary reasons.

"(C)   Disciplinary procedures adopted pursuant to ORS 421.180."

(Emphasis added.) As we read ORS 183.310(9)(f), if violation of an ODOC rule of conduct may lead to any of the specified consequences, then the rule of conduct is a reviewable rule if it otherwise qualifies as a rule under ORS 183.310(9). There are three specified consequences; placement in segregation for more than seven days is one of them, but not the only one.

As pertinent here, violation of the specified TRCI housing unit guidelines may lead to another of the consequences specified in ORS 183.310(9)(f), *viz.*, "[d]isciplinary procedures adopted pursuant to ORS 421.180." ORS 421.180 provides:

"The Department of Corrections by rule shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the department."

As noted, TRCI observes that the TRCI orientation package states that violations of the TRCI housing unit guidelines will lead to disciplinary hearings conducted in accordance with OAR chapter 291, division 105. Such disciplinary hearings are procedures used to discipline people committed to ODOC custody and adopted pursuant to ORS 421.180. Every rule in OAR chapter 291, division 105, lists ORS 421.180 among the statutes that constitute the authority for its promulgation. And the first rule of that division—entitled "Authority, Purpose and Policy"—provides:

"(1)   Authority: The authority for this rule is granted to the Director of the Department of Corrections in accordance with ORS 179.040, 421.068, 421.180, 423.020, 423.030, and 423.075

"(2)   Purpose: The purpose of this rule is to define the rules of conduct governing inmates and *outline the procedures to be followed in processing disciplinary action(s).*"

OAR 291-105-0005 (emphasis added). OAR chapter 291, division 105, sets out disciplinary procedures adopted pursuant to ORS 421.180. Because violation of the specified TRCI housing unit guidelines will lead to disciplinary procedures under that division, the guidelines are not unreviewable ODOC rules of conduct.

Finally, TRCI argues that "most" of the specified TRCI housing unit guidelines are not rules because they are merely applications of existing ODOC rules. As we have explained, an agency's elaboration of the manner in which a validly promulgated rule operates in a specific context need not itself be promulgated as a rule if the unpromulgated elaboration merely explains what is necessarily required by the rule to which it applies. *See Burke*, 31 Or App at 165 ("There is no reason to require the formalities of rulemaking whenever an agency undertakes to explain the necessary requirements of an existing rule."); *see also Associated Oregon Veterans v. DVA (A46714)*, 94 Or App 510, 514, 766 P2d 1040, *rev den*, 306 Or 527 (1988) ("An administrative agency need not engage in the formalities of rulemaking if its directive is merely an application of an existing rule and if the existing rule necessarily requires the result set forth in that directive."). On the other hand, "the interpretive amplification or refinement of an existing rule is a new exercise of agency discretion and must be promulgated as a rule under the APA to be valid." *Burke*, 31 Or App at 165. Independent rulemaking is required if it can be established that the existing rule is susceptible to a reasonable interpretation other than that given by the agency. *Associated Oregon Veterans*, 94 Or App at 514.

As noted, petitioner cites seven specific provisions of the TRCI housing unit guidelines, which we numbered for convenience above. 259 Or App at 20-21. We understand TRCI to argue that four of those seven provisions are mere applications of existing validly promulgated rules and, hence, are exempt from independent rulemaking.[2]

TRCI argues that the "requirements to report and not loiter" are applications of OAR 291-105-0015(4)(p). We understand TRCI to refer to these parts of the TRCI housing unit guidelines (repeating the numbering we assigned above, 259 Or App at 20):

---

[2] Specifically, we understand TRCI to raise that argument with respect to the provisions that we have numbered (1), (2), (3), and (5). As explained below, in connection with the provision that we have numbered (2), TRCI argues that the first two sentences are mere applications of OAR 291-105-0015(4)(p) and that the third sentence is a mere application of OAR 291-105-0015(1)(c).

(1) "During mandatory cell in times you are to report directly to your cell, or be subject to disciplinary action."

(2) "Inmates are not to loiter in the weight area, or on the exercise equipment. If it is not actively used inmates are not to be at or on it."

OAR 291-105-0015(4)(p) provides that "[a]n inmate commits Unauthorized Area II when he/she fails to be present or is in any location not designated by assignment, programmed activity, call out or staff directive." OAR 291-105-0015(4)(p) requires inmates to be (or not be) in locations designated by certain sources of authority: (1) assignment, (2) programmed activity, (3) call out, or (4) staff directive. Those four terms are not defined in OAR chapter 291, division 105.

The TRCI housing unit guidelines are, as explained above, directives to inmates, and accordingly failure to comply with them is failure to comply with a "staff directive." Thus, when an inmate does not report to the inmate's cell for report or when an inmate loiters in the weight area, the inmate necessarily violates OAR 291-105-0015(4)(p). Because the quoted provisions of the TRCI housing unit guidelines (what we have numbered provision (1) and the first two sentences of provision (2)) merely apply OAR 291-105-0015(4)(p), ODOC was not required to promulgate those guidelines independently under formal APA rulemaking procedures.

TRCI also argues that the "requirements to not slam weights, to not tamper with personal property, and to not misuse vending machines" are applications of OAR 291-105-0015(1)(c). We understand TRCI to refer to these parts of the TRCI housing unit guidelines (repeating the numbering we assigned above, 259 Or App at 20-21):

(2) "Slamming of weights is strictly prohibited and subject to disciplinary action."

(3) "Inmates shall not alter or otherwise tamper with or use any personal property item for other than the items [*sic*] intended purpose. Unauthorized alterations or use of an authorized personal property item for other than its intended purpose may result in confiscation of the item and/or disciplinary action. (Including empty containers)."

(5) "Failure to comply with the above vending procedure may result in a suspension of visiting privileges and/or a misconduct report being submitted."

(Punctuation as in original.) OAR 291-105-0015(1)(c) provides that "[a]n inmate commits Property II when he/she, except as authorized by a DOC or OCE employee, destroys, alters, abuses, damages, defaces, misuses, tampers with or wastes materials or property or fails to properly protect or produce property issued to him/her in a timely manner." OAR 291-105-0015(1)(c) thus requires or prohibits certain inmate conduct in connection with property.

As to the first quoted provision of the TRCI housing unit guidelines (the third sentence of what we have numbered as provision (2)), we readily conclude that "abuse" or "misuse" of "property" includes slamming of weights. That provision accordingly is merely an application of OAR 291-105-0015(1)(c).

To the extent that the second quoted provision (what we have numbered as provision (3)) prohibits "altering" or "tampering with" property, it merely restates the terms of OAR 291-105-0015(1)(c). The second quoted provision also prohibits using property for other than its intended purpose; that is necessarily within the "misuse" prohibited by OAR 291-105-0015(1)(c). Accordingly, the second quoted provision also is merely an application of OAR 291-105-0015(1)(c).

The third quoted provision (what we have numbered as provision (3))—authorizing discipline for violation of TRCI Housing Unit 22's vending procedure—must be considered in the context of the vending procedure, which provides:

"Use of the vending machine will be as follows:

"1.  All items purchased will be consumed or disposed of in the visiting room.

"2.  Inmates are prohibited from handling any money.

"3.  Inmates will not approach or operate the vending machine at any time.

"4.  Visitors will not have more than $15.00 in change, per visiting period.

"5.    All monies shall be in coin (quarters, dimes, nickels) and carried in a clear plastic bag or small clear purse type container.

"6.    No vending items will be exchanged with other inmates or visitors.

"7.    Inmates are responsible for the cleanliness of their visiting area."

The terms of that vending procedure go beyond the terms, or necessary implications, of OAR 291-105-0015(1)(c). For example, the vending procedure prohibits inmates from handling money and makes them responsible for the cleanliness of the visiting area. Those parts of the procedure are not necessarily included in the requirements and prohibitions on inmate conduct in relation to property contained in OAR 291-105-0015(1)(c). Accordingly, the third quoted provision of the TRCI housing unit guidelines is not exempt from formal rulemaking procedures as a mere application of OAR 291-105-0015(1)(c).[3]

To summarize, petitioner has cited seven specific provisions of the TRCI housing unit guidelines. We have concluded that the TRCI housing unit guideline that we have numbered as provision (7) is not a "rule" for APA purposes, and, accordingly, we dismiss petitioner's challenge as to that provision. We have concluded that the TRCI housing unit guidelines that we have numbered (1) to (6) are rules, and not orders or unreviewable ODOC rules of conduct. TRCI raises no argument that two of those provisions (4) and (6), are "mere applications" of existing, validly promulgated rules. Accordingly, we hold those provisions invalid. As to provision (1), we have concluded that it is a "mere application" of OAR 291-105-0015(4)(p); accordingly, we dismiss petitioner's challenge as to provision (1). As to provision (2), we have concluded that the first two sentences are a "mere application" of OAR 291-105-0015(4)(p); accordingly, we dismiss petitioner's challenge as to those sentences of provision (2). As to the third sentence of provision (2), we have concluded

_____

[3] TRCI does not argue that, and we do not address whether, the third quoted provision of the TRCI housing unit guidelines is exempt from formal rulemaking procedures as a mere application of any other provision of OAR chapter 291. *See, e.g.*, OAR 291-127-0290 (governing visiting-room protocol).

that it is a "mere application" of OAR 219-105-0015(1)(c); accordingly, we dismiss petitioner's challenge as to that sentence of provision (2). As to provision (3), we have concluded that it is a "mere application" of OAR 219-105-0015(1)(c); accordingly, we dismiss petitioner's challenge as to provision (3). As to provision (5), we have concluded that it is not a "mere application" of OAR 219-105-0015(1)(c); accordingly, we hold provision (5) invalid. The following chart illustrates our disposition of petitioner's challenges in case number A152303:

| CHALLENGE (for numbering, refer to 259 Or App at 20-21) | DISPOSITION |
| --- | --- |
| TRCI housing regulations as a whole | Petition dismissed as to that challenge |
| Provision 1 | Petition dismissed as to that challenge |
| Provision 2, first two sentences | Petition dismissed as to that challenge |
| Provision 2, final third sentence | Petition dismissed as to that challenge |
| Provision 3 | Petition dismissed as to that challenge |
| Provision 4 | Held invalid |
| Provision 5 | Held invalid |
| Provision 6 | Held invalid |
| Provision 7 | Petition dismissed as to that challenge |

In A147284, petition for judicial review dismissed as to challenge to ODOC newsletter; in A152303, petition for judicial review dismissed in part and rules held invalid in part as set out in the chart on the final page of the court's opinion.