BREWER, S. J.
*888 In this rule challenge under ORS 183.400(1),[1] petitioner contends that information published online by the Oregon Parks and Recreation Department, through its State Historic Preservation Office (SHPO), describing property owners eligible to concur in or object to a nomination of property for inclusion in the National Register of Historic Places constitutes a "rule" within the meaning of the Administrative Procedures Act (APA), ORS 183.310 to 183.690, and is invalid because SHPO failed to comply with applicable rulemaking procedures. We conclude that the part of the published information-hereafter referred to as "the ownership counting standard" or "the standard"-that designates trusts as eligible owners is invalid.
The National Park Service (NPS) administers the National Register Program. 36 CFR § 60.3(h). Nominations submitted by State Historic Preservation Officers, prepared under approved State Historic Preservation Programs, and approved by NPS, are one way that the NPS adds properties to the National Register of Historic Places. 36 CFR § 60.1 (b)(3) ; see ORS 358.612(5) ; ORS 358.617. To implement the program, existing federal regulations and SHPO rules establish a procedure by which properties may be added to the National Register. A state SHPO must give "owners of private property an opportunity to concur in or object to a listing." 36 CFR § 60.6(b). It is "the responsibility of [SHPO] to ascertain whether a majority of owners of private property have objected." 36 CFR § 60.6(g). As pertinent here, a federal regulation defines "owner or owners" as
"those individuals, partnerships, corporations or public agencies holding fee simple title to property. Owner or owners does not include individuals, partnerships, corporations or public agencies holding easements or less than fee interests (including leaseholds) of any nature."
36 CFR § 60.3(k) (emphasis added). SHPO, as part of the Oregon Parks and Recreation Department, adopted by reference the *889 1994 version of 36 CFR section 60, which is identical to the current version. OAR 736-050-0220.
In May 2017, SHPO submitted the nomination of petitioner's neighborhood for historic district designation to NPS. SHPO advised NPS of its "opinion that the proposed Eastmoreland Historic District (District) is eligible for listing in the National Register of Historic Places," but "due to procedural inconsistencies in the tallying of property owners within the District," SHPO could not "provide a reliable list of property owners eligible to object to the proposed listing." SHPO specifically noted that, despite several attempts to determine the total number of *1173 owners in the district, it could not decide how to properly count the owners.
NPS returned the nomination at SHPO's request so that SHPO could continue its effort to make an accurate count of total property owners and total objections. In returning the nomination, NPS advised SHPO that state law governs the determination of property ownership for purposes of an historic district nomination and that SHPO should refer any ownership questions to an authorized state official.
After the nomination was returned to SHPO, it published the challenged ownership counting standard on its website. The standard, which is entitled "How to count owners for historic districts," provides:
"A husband and wife are both listed as owners-each gets a vote and their vote is counted separately. If only one spouse is listed in the records as owner, that person gets one vote.
"Several people own one property and each is recorded as an owner-each gets one vote.
"A person owns several properties within the nominated boundary-that person gets one vote, regardless of how many properties he or she owns.
"A partnership is listed as an owner-the partnership is considered one owner and it gets one vote (regardless of how many partners there are).
"A corporation is listed as an owner-the corporation gets one vote.
*890 "A trust is listed as an owner-the trust is considered one owner and it gets one vote.
"A condominium is included within the nominated boundary. The owners of individual units in a condominium hold fee simple title to their property, and therefore are considered owners under the notification provisions of National Register regulations. Each owner of a condominium unit listed in the official land recordation or tax records gets one vote. In addition, the condominium association may be considered one owner for notification purposes if the common areas of the condominium property are owned in fee simple title by that entity.
"A co-operative (co-op) is included within the nominated boundary. Those individuals participating in a co-operative are part of a corporation and do not hold fee simple title-the co-operative gets one vote.
"A district which includes both public and private property owners. Example, a district includes 100 owners (four public property owners and 96 private property owners). For purposes of owner concurrence or objection, only the 96 private property owners' votes must be tabulated. If 49 of the private property owners (51% of 96) object, the property cannot be listed."[2]
It is undisputed that SHPO did not comply with the APA's rulemaking requirements before it published the ownership counting standard. The only issue before us is whether the standard constitutes a "rule" and, therefore, SHPO was required to comply with rulemaking procedures before adopting it. The parties agree on the legal principles that govern the issue but differ with respect to their application here. As noted, petitioner asserts that the ownership counting standard is a rule because it amplifies and refines the definition of "owner" in the federal regulation that SHPO adopted and incorporated in its existing rule. In particular, petitioner contends that the standard amplifies and refines the existing rule by (1) including an example, thereby limiting the definition of owner to the terms listed *891 in the example, and (2) adding trusts to the list of eligible voting owners.[3] *1174 SHPO replies that the ownership counting standard is not a rule because: (1) it does not amplify and refine the meaning of owner in the existing rule but, instead, merely reflects a necessary application of the existing rule and (2) any expansion of the meaning of owner in the standard was required under federal policy guidance adopted by NPS and did not constitute an exercise of discretion by SHPO that required compliance with rulemaking procedures.
Our determination whether the standard constitutes a rule is governed by ORS 183.310, which provides, in part:
"(9) 'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:
"(a) Unless a hearing is required by statute, internal management directives, regulations or statements which do not substantially affect the interests of the public:
*892 "(A) Between agencies, or their officers or employees; or
"(B) Within an agency, between its officers or between employees.
"(b) Action by agencies directed to other agencies or other units of government which do not substantially affect the interests of the public."
Our review under ORS 183.400 "is limited to the face of the rule and the law pertinent to it." Confederated Tribes v. Dept. of Fish and Wildlife , 244 Or. App. 535, 538, 260 P.3d 705 (2011) (internal quotation marks and citation omitted). "We may declare a rule invalid only if we conclude that the rule violates constitutional provisions, exceeds the agency's statutory authority, or was adopted without compliance with applicable rulemaking procedures." Smith v. TRCI , 259 Or. App. 11, 13, 312 P.3d 568 (2013) ; see ORS 183.400(4).
An agency's explanation of how "a validly promulgated rule operates in a specific context need not itself be promulgated as a rule if the unpromulgated elaboration merely explains what is necessarily required by the rule to which it applies." Smith v. TRCI , 259 Or. App. at 25, 312 P.3d 568. In other words, if an agency merely "provid[es] information about an existing administrative rule," then "there is no rule to review." Smith v. DCBS , 283 Or. App. 468, 471, 388 P.3d 1253, rev. den. , 361 Or. 350, 393 P.3d 1182 (2017). However, " 'the interpretive amplification or refinement of an existing rule is a new exercise of agency discretion and must be promulgated as a rule under the APA to be valid.' " Smith v. TRCI , 259 Or. App. at 25, 312 P.3d 568 (quoting Burke v. Public Welfare Div. , 31 Or. App. 161, 165, 570 P.2d 87 (1977) ). If a rule "is susceptible to reasonable interpretations other than [that given by the agency]" in purporting to apply it, then it has been amplified and refined. Smith v. TRCI , 259 Or. App. at 25, 312 P.3d 568 (citation omitted).
In light of those principles, we consider petitioner's arguments in the order made. The example to which petitioner refers in his first argument reads as follows:[4]
*1175 *893 "[A] district includes 100 owners (four public property owners and 96 private property owners). For purposes of owner concurrence or objection, only the 96 private property owners' votes must be tabulated. If 49 of the private property owners (51% of 96) object, the property cannot be listed."
In arguing that the quoted example amplifies and refines the existing rule, petitioner relies on this court's decision in Smith v. Dept. of Corrections , 276 Or. App. 862, 369 P.3d 1213 (2016) ( Smith v. DOC ). At issue in that case was a Department of Corrections (DOC) health policy that "establishe[d] the method and guidelines used to determine whether treatment will or will not be provided [to inmates] by DOC." Id. at 867, 369 P.3d 1213 (internal quotation marks omitted; second brackets in Smith v. DOC ). That policy defined the same four levels of health care as an applicable federal regulation, and additionally gave "examples of the types of medical conditions that fall within the definition." Id. at 868, 369 P.3d 1213. The court explained that levels of care in the policy were not "self-defining," i.e. , that "the rule define[d] levels of care in a manner that require[d] health care providers to make judgments with certain general criteria in mind." Id. at 872, 369 P.3d 1213 (internal quotation marks and citation omitted). The court held that DOC's policy was a rule because the examples of medical conditions attached to the definition of each level of care constituted at least a refinement of the federal regulation and thus required compliance with the APA. Id.
Here, in contrast to the circumstances in Smith v. DOC , the quoted example of counting concurrence with, or objection to, a nomination of property in a district with four public property owners and 96 private property owners merely provides a straightforward application without amplification of the existing federal rule, which provides that all "owners of private property" (but not public property) must be given an opportunity to concur with or object to a listing and that both private individuals and public agencies count as owners with respect to private property. Moreover, the example does not by its terms limit the universe of eligible voters to private individuals or public agencies. It is merely a nonexclusive illustration of the application of the existing rule. As a consequence, the example does not support petitioner's argument that promulgating *894 the ownership counting standard required a new rulemaking process.
In his second argument, petitioner asserts that including trusts in the ownership counting standard amplified and refined the existing rule, which did not list trusts among a finite population of "owners"-"individuals, partnerships, corporations or public agencies." 36 CFR § 60.3(k) ; OAR 736-050-0220. According to petitioner, in adding trusts to the list of eligible voting owners, the standard impermissibly expanded the existing rule to yield a different result from that prescribed by the rule. Smith v. DOC , 276 Or. App. at 872, 369 P.3d 1213. SHPO replies that in adding trusts, it merely pronounced how the existing rule "operates in a specific context" where "the existing rule necessarily requires the result set forth in that pronouncement." See Burke , 31 Or. App. at 165, 570 P.2d 87 (holding that compliance with rulemaking procedures is not required in such circumstances).
In Smith v. DOC , this court held that a provision in a Department of Corrections' health policy requiring a "committee to review any procedure exceeding $50,000 [was] a refinement of the rule, if not an outright addition to the rule." 276 Or. App. at 872, 369 P.3d 1213. As we explained,
"[t]he rule itself mentions cost of procedure only once-defining Level 4 care as 'valuable to a certain individual but *** significantly less likely to be cost effective or to produce substantial long term improvement.' Other than that reference, there is nothing in the provisions of [the general rule] that indicates any limitation on a procedure based on the fact that its cost exceeds a particular dollar amount."
Id. at 872-73, 369 P.3d 1213 (ellipsis in Smith v. DOC ).
*1176 Here, as was the circumstance in Smith v. DOC , the standard's inclusion of trusts as owners was not an "informal embellishment" or a "pronouncement" of how the existing rule operates in a specific context that "necessarily requires the result set forth in that pronouncement." To reiterate, the existing rule confines the term "owner" to a finite set-"those individuals, partnerships, corporations or public agencies holding fee simple title to property." Adding another type of entity-trusts-to that finite definitional set amounted to "an interpretive amplification" of the definition *895 of "owner" in the governing rule. Stated differently, nothing in the text or context of the existing rule necessarily required treating trusts as owners. Including trusts as owners for the purpose of voting on a nomination for inclusion in the National Register, therefore, required a properly adopted rule.[5]
In sum, we conclude that the part of the ownership counting standard published on SHPO's website that adds trusts to the list of eligible owners for the purpose of voting on nominations of districts for inclusion in the National Register of Historic Places constitutes a rule. Because SHPO promulgated the standard without complying with rulemaking procedures, see ORS 183.400(4)(c), the provision of the standard that designates trusts as eligible owners is invalid.[6]
Provision of State Historic Preservation Office's ownership counting standard that designates trusts as eligible owners held invalid.

ORS 183.400(1) provides, in part:
"The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases."

Oregon Parks and Recreation Department, How to count owners for historic districts , https://www.oregon.gov/oprd/HCD/NATREG/docs/Eastmoreland%20Historic%20District/HowToCountOwnersForHistoricDistricts.pdf (accessed Mar 27, 2019) (underscoring in original).

Petitioner asserted for the first time in his reply brief that the standard's inclusion of condominium associations as owners impermissibly amplified and refined the existing federal rule because, under Oregon Law, condominium associations are unincorporated associations and the latter are not listed as owners in the existing rule. See ORS 100.405(1)(b)(B) (defining "condominium association" as including "unincorporated association"). Because that argument was not raised or adequately developed in petitioner's opening brief, we do not consider it here. See, e.g. , Karuk Tribe of California v. TriMet , 241 Or. App. 537, 548, 251 P.3d 773 (2011), aff'd , 355 Or. 239, 323 P.3d 947 (2014) ("[A]s we have often had occasion to remind others, '[a] party may not raise an issue for the first time in a reply brief.' " (Citation omitted.)). Petitioner's "trust as owner" argument, however, was properly raised for the first time in his reply brief because it was a "logical reply" to an argument that SHPO made in its answering brief. See Stewart v. Kralman , 240 Or. App. 510, 516, 248 P.3d 6 (2011) (explaining that petitioner was not barred from raising trespass argument for the first time in his reply brief because it was "the logical reply to plaintiff's assertion that the driveway was closed to the public"). In particular, SHPO argued in its answering brief that because NPS wrote a letter stating, in pertinent part, that " 'the owner of a property for purposes of objecting to a National Register nomination is: a trust and not its trustees ***.' SHPO need not engage in rulemaking to relay guidance developed by the National Park Service." (Emphasis in original.) Therefore, the issue whether SHPO engaged in rulemaking by including trusts as owners in the ownership counting standard is properly before us.

Petitioner argues that SHPO adds "examples" to the definition of owner. There is only one example, however, in the ownership counting standard, the one to which we refer.

As noted above, SHPO urges us to consider certain "guidance" documents from NPS that it attached to its brief in support of its argument that adopting the ownership counting standard did not require compliance with rulemaking procedures. In particular, one of the documents-a 2003 letter to SHPO from an NPS representative-stated that the owner of a property for purposes of objecting to a National Register nomination is "a trust and not its trustees," "a corporation and not its shareholders," and "a partnership and not its partners." SHPO argues that "to the extent the information on the website about how to count owners expands on the federal regulations, it reflects federal policy adopted by the National Park Service and not SHPO."
The difficulty with SHPO's argument is that neither that letter nor anything else in the record indicates that it or any of the other proffered documents are binding on SHPO, either because they are mandatory federal regulations or pursuant to any other source of law. In sum, insofar as they refer to trusts, the proffered documents do not support SHPO's position.

We emphasize that our conclusion should not be understood as a holding that SHPO either has or lacks authority to validly adopt by rule an ownership counting standard that includes trusts as owners.