Argued and submitted May 20, 2021, DEQ's challenged rule held invalid
January 26, petition for review allowed July 7, 2022 (370 Or 56)
See later issue Oregon Reports

PNW METAL RECYCLING, INC.,
dba Rivergate Scrap Metals,
dba RS Davis Recycling, dba PNW Auto Parts,
dba Orient Auto Parts and Recycling,
an Oregon corporation;
Schnitzer Steel Industries, Inc.,
an Oregon corporation;
and Pacific Recycling, Inc.,
an Oregon corporation,
*Petitioners,*

*v.*

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY,
an agency of the State of Oregon,
*Respondent.*

Department of Environmental Quality
A171317

505 P3d 462

In this rule challenge under ORS 183.400(1), petitioners contend that a decision by the Oregon Department of Environmental Quality (DEQ) to reinterpret the "auto dismantler exemption" to the solid waste permitting requirement constitutes a "rule" within the meaning of the Oregon Administrative Procedures Act, ORS 183.310 to 183.690, and is invalid because DEQ does not have rulemaking authority on that subject and the agency did not conduct formal rulemaking procedures. DEQ formerly interpreted the exemption to apply to an entire facility that had an auto dismantler certificate, but has now concluded that it applies only to the auto dismantling operations within a facility, such that scrap metal recyclers that accept nonvehicular materials must obtain solid waste permits. *Held*: The new interpretation was a "rule" because it was not necessarily required by statute and it was generally applicable.

DEQ's challenged rule held invalid.

Jon W. Monson argued the cause for petitioners. Also on the joint opening brief were Nicole M. Swift and Cable Huston LLP; and Crystal S. Chase, Kirk B. Maag, and Stoel Rives LLP. Also on the joint reply brief was Nicole A. W. Abercrombie.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Danielle F. Waterfield; and Jennifer Gates and Pearl Legal Group, PC, filed the brief *amicus curiae* for Institute of Scrap Recycling Industries, Inc.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

DEQ's challenged rule held invalid.

**KAMINS, J.**

In this rule challenge under ORS 183.400(1), petitioners contend that a decision by the Oregon Department of Environmental Quality (DEQ) to reinterpret one of its governing statutes regarding solid waste permitting constitutes a "rule" within the meaning of the Oregon Administrative Procedures Act (APA), ORS 183.310 to 183.690, and is invalid because DEQ does not have rulemaking authority on that subject and the agency did not conduct formal rulemaking procedures. We agree with petitioners and conclude that the new interpretation is a rule under the APA and therefore invalid.

The "rule" at issue relates to DEQ's interpretation of the so called "auto dismantler exemption" to the solid waste permitting requirement. Oregon's solid waste management statutes require that "disposal site[s]" obtain a solid waste disposal permit from DEQ. ORS 459.205(1). The definition of "disposal site," however, "does not include: *** [a] site operated by a dismantler issued a certificate under ORS 822.110." ORS 459.005(8)(b)(D). That is the "auto dismantler exemption." The certificate referred to in the exemption is an automobile dismantler certificate issued by the Oregon Department of Transportation (ODOT).

Petitioners are scrap metal recyclers, whose business it is to purchase unwanted automobiles as well as other metal items, process them into scrap metal, then resell the resulting materials. Until 2018, DEQ allowed them to operate without a solid waste disposal permit, pursuant to the auto dismantler exemption, even though they also processed nonvehicular items such as household appliances. However, in late 2018, DEQ notified two of the petitioners that they did not qualify for the exemption because they accepted nonvehicular materials in addition to cars and asked them to apply for solid waste disposal permits. In other words, DEQ previously interpreted the exemption to apply to an entire facility if it had a dismantler certificate, but the agency has now concluded that the exemption only applies to the dismantling operations within each facility.

DEQ's decision is evidenced by two principle sources. The first is an internal memorandum prepared by senior

DEQ staff in August 2018. That memorandum discussed a large fire that occurred at an automobile dismantling facility (unrelated to petitioners) in Northeast Portland in March 2018. It also analyzed "potential gaps in environmental regulation of automobile dismantlers," and proposed "potential actions to fill those gaps." One option it suggested:

> "DEQ historically has applied the statutory exemption from solid waste management regulation as applying to an entire operation, even if that operation includes solid waste other than automobiles. Nevertheless, the statutory exemption could be applied narrowly to only cover auto dismantling operations—leaving other solid waste activities subject to regulation."

The memorandum thus acknowledged that established DEQ practice was to interpret the auto dismantler exemption to apply to an entire facility, not just the auto dismantling activities within that facility, and proposed changing that practice.

Petitioners also cite statements made by DEQ staff at a December 2018 meeting between agency representatives and petitioner PNW Metal Recycling, Inc. During that meeting, Program Manager Audrey O'Brien acknowledged that, "historically, we've said, if you had the DMV certificate, then you're not defined as a disposal site by law," but explained that, "[w]hat we have clarified is that, for those facilities that accept other types of waste materials in addition to vehicles, they are a disposal site, and they should be regulated under a DEQ permit." DEQ representatives also indicated that the new interpretation would be applied to all other similar businesses. Specifically, a Senior Environmental Engineer stated, "we haven't gotten to those yet, but they—we will." Petitioners contend that the memorandum combined with those statements demonstrate that DEQ adopted a new, generally applicable policy that contradicted its prior practices.

Under ORS 183.400, our review to determine the validity of a rule is limited to "the face of the rule and the law pertinent to it." *Smith v. TRCI*, 259 Or App 11, 13, 312 P3d 568 (2013) (*Smith 2013*) (internal quotation marks omitted). We may declare a rule invalid only if it violates the

state or federal constitutions, exceeds the agency's statutory authority, or was adopted in violation of applicable rulemaking procedures. *Id.* The parties agree that if DEQ's decision constitutes a rule, it is invalid because DEQ does not have authority to promulgate rules regarding solid waste permitting,[1] and the agency did not conduct formal rulemaking procedures. The issue on appeal is thus limited to whether the new interpretation constitutes a "rule" as defined by the APA.

ORS 183.310(9) broadly defines a "rule" as "any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency." However, an agency elaboration that "merely explains what is necessarily required" by a validly promulgated rule is not itself a rule. *Smith 2013*, 259 Or App at 25 (citation omitted). Conversely, an "interpretive amplification or refinement of an existing rule," does constitute a rule. *Id.*; *see also Smith v. Dept. of Corrections*, 276 Or App 862, 871, 369 P3d 1213 (2016) (explaining that rules include "policy-based" interpretations of "an existing rule which could have been otherwise construed"). To determine whether a given interpretation is "necessarily required" as opposed to an "amplification or refinement," we consider whether "the existing rule is susceptible to a reasonable interpretation other than that given by the agency." *Smith 2013,* 259 Or App at 25. In sum, to be a "rule," the challenged agency directive must be (1) of "general applicability," and (2) not "necessarily required" by a statute or validly promulgated rule.

ORS 459.005(8) defines "disposal site" as follows:

"(a)  'Disposal site' means land and facilities used for the disposal, handling or transfer of, or energy recovery, material recovery and recycling from solid wastes, including but not limited to dumps, landfills, sludge lagoons, sludge treatment facilities, disposal sites for septic tank pumping or cesspool cleaning service, transfer stations, energy recovery facilities, incinerators for solid waste

---

[1] That rulemaking authority rests with the Environmental Quality Commission. ORS 459.045.

delivered by the public or by a collection service, composting plants and land and facilities previously used for solid waste disposal at a land disposal site.

"(b)    'Disposal site' does not include:

"* * * * *

"(D)    A site operated by a dismantler issued a certificate under ORS 822.110."

Petitioners contend that the ordinary meaning of "site" indicates that the legislature intended for the exemption to apply to an entire facility if that facility has a dismantler certificate. DEQ, on the other hand, argues that because subsection (a) defines "disposal site" as "land and facilities used for" disposal activities, the legislature intended to limit the permit exemption to only those "land and facilities used for" automobile dismantling, requiring a permit for any other solid waste disposal even if it occurs at a facility that also dismantles automobiles. Both interpretations are reasonable, as demonstrated by DEQ's longstanding adherence to the interpretation it now rejects. Because more than one interpretation is plausible, the most recent interpretation is not "necessarily required" by the statute. DEQ's decision to change its interpretation is a "new exercise of agency discretion" which must be promulgated as a rule to be valid. *Smith 2013*, 259 Or App at 25; *see also Fulgham v. SAIF*, 63 Or App 731, 735-36, 666 P2d 850 (1983) (concluding that the Workers' Compensation Board's attempt to reverse its "long-standing procedures" of treating a request for a hearing date as an adequate response to an order to show case was a rule).

DEQ also argues that the new interpretation is not "generally applicable" because it only applies to petitioners PNW Metal Recycling, Inc. and Schnitzer Steel Industries, Inc. However, the August 2018 memorandum, which did not specifically discuss petitioners' facilities, demonstrates that the reason DEQ reconsidered its interpretation was to increase oversight of the entire industry, and then the agency decided to enforce it against petitioners first. As its representatives acknowledged, DEQ intends to eventually apply the new interpretation to and require solid waste permits for all scrap metal recyclers in Oregon that accept

vehicles and nonvehicles. Petitioners have demonstrated that the new interpretation is "generally applicable." *See Smith v. Board of Parole*, 250 Or App 345, 349, 284 P3d 1150 (2012) (concluding that a notice-of-rights form was of general applicability because it applied identically to "all inmates in a particular category or class of hearings").

DEQ finally contends that petitioners have failed to identify a "directive, standard, regulation, or statement," because the purported rule is not embodied in any official document. Typically, our review of "the face of the rule and the law pertinent to it" contemplates situations where the agency announced its policy in written form. *Smith 2013*, 259 Or App at 13. The burden is on petitioners to identify the purported rule and prove that it qualifies as such under the APA. *Smith v. Dept. of Corrections*, 300 Or App 309, 311-12, 454 P3d 12 (2019) (*Smith 2019*). Here, despite the lack of a single document embodying the rule, petitioners point to several "statements," including a memorandum and oral statements to verify its existence. The August 2018 memorandum,[2] together with DEQ officials' unequivocal statements, demonstrate that DEQ substantially reinterpreted the automobile exemption across the board. Indeed, the fact of this policy shift is not disputed by DEQ in this proceeding. We are thus able to clearly identify the rule without sifting through extensive policies or transcripts. *Smith 2019*, 300 Or App at 311. Where, as here, an agency makes a generally applicable, policy-based decision, it cannot evade formal rulemaking requirements merely by failing to memorialize it in writing.

DEQ's new interpretation of the "auto dismantler exemption" reverses its long-standing practice without complying with the APA's rulemaking procedures. Because that action is "generally applicable" and not "necessarily required" by the statute, it constitutes a "rule" as defined by ORS 183.310(9) and is thus invalid.

DEQ's challenged rule held invalid.

---

[2] Although the interagency memorandum is not itself a rule, *see* ORS 183.310(9)(d), it evinces the existence of the DEQ policy.